## PHILLIPS *v.* HIRSCH.

1. INSURANCE—CANCELLATION OF POLICY—INTENT—EVIDENCE.

   Letter from insured to insurer in response to latter's request for additional information slightly over a month after initial payment on premium for automobile liability insurance was paid *held,* when taken as a whole, not intended by insured to terminate the insurance notwithstanding her statement therein to "return the money and keep your policy," in view of detailed information both preceding and following such statement and offer to supply such further information as might be desired.

2. SAME—AUTOMOBILES—CANCELLATION OF POLICY—REJECTION AFTER NOTICE OF ACCIDENT.

   Insurer under automobile liability policy *held,* in garnishment proceedings, not relieved of responsibility thereunder by letter sent to it by insured in response to its request for information in which insured stated, among other things, that insurer should return her money and keep the policy it had not yet forwarded, where it failed to return the money until after it had been notified of accident in which plaintiff's decedent was instantly killed.

Appeal from Berrien; Evans (Fremont), J. Submitted January 3, 1940. (Docket No. 43, Calendar No. 40,908.) Decided April 1, 1940.

Garnishment proceedings by Irene M. Phillips, special administratrix of the estate of Ray Phillips, deceased, against Mrs. Herman Hirsch and Adolph Hirsch, principal defendants, and Allstate Insurance Company, an Illinois corporation, garnishee defendant. Judgment for garnishee defendant. Plaintiff appeals. Reversed.

*Charles W. Gore,* for plaintiff.

*White & White* (*Charles E. White,* of counsel), for garnishee defendant.

MCALLISTER, J. On September 17, 1937, Mrs. Herman Hirsch made written application to the Allstate Insurance Company for an automobile insurance policy for public liability to the extent of $5,000. She paid an installment of $11.92. The total yearly premium was $29.80. The insurance company accepted liability on October 19, 1937, by writing, and notified Mrs. Hirsch that while she would be insured in the interim, there would be a delay in forwarding the policy. Thereafter, on November 29, 1937, the company wrote to Mrs. Hirsch requesting additional information and stating that certain questions on the application had been unanswered. Mrs. Hirsch answered this letter by typing answers in the margins of the paragraphs, as will hereafter appear, and returning the letter so commented upon with a communication of her own. The letter from the insurance company, among other matters, stated:

"First, we desire to know whether or not you are the sole owner of the car. This question was asked on the application, but was unanswered. Of course, we know that the car is being financed, but a finance company is not considered as a part owner. In the event you are not the sole owner, then tell us the full name, address and relationship to you of the other person or persons who are part owners."

In the margin opposite this paragraph, Mrs. Hirsch typed:

"How do you know this? It is not true."

The company's letter went on:

"Also, we desire to know if the finance company or mortgagee carries any collision insurance on your car so as to protect their interest. This is important as a duplication of collision coverage automatically voids both policies. As you probably are aware, a finance company usually carries collision, fire and theft insurance on a financed car so as to protect their interest."

Mrs. Hirsch's written comment on the above was:

"We are not dumb in regard to this matter."

Another paragraph of the company's letter set forth:

"Secondly, it is our understanding that your car is occasionally driven by your youngest son—age 14 —a student. Is this correct? If it is, it will be necessary that you give us permission to exclude coverage while the car might be driven by fellow students of your son or while fellow students are being carried in the car."

To the foregoing Mrs. Hirsch typed the following:

"By whom was such information given? Whoever did is badly mixed up about the matter."

The company also mentioned trailers, and stated that the policy did not provide protection when a trailer was used, and that additional payments were required for protection when the car was used with a trailer. The letter continued:

"Also, explain fully who drives the car when the trailer is being towed. Mention the full name, address, and age of this person or persons."

Mrs. Hirsch's answer to this inquiry, in the margin of the letter, was:

"Whoever drives is legalized to do so. Ages 16–19–21 respectively."

The company concluded the letter by stating that the policy would be forwarded as soon as the information was received, and that protection was in force the same as though the policy was in her possession.

The foregoing letter with her remarks typed in was sent back to the company by Mrs. Hirsch with the following additional communication on December 2, 1937:

> "Coloma, Mich.
> "Dec. 2nd '37

*"Mr. Neugarten:*

"In reply to yours of the 1st—Will say, kindly return the money and keep your policy. I have waited long enough for the same—It looks very much like foul play in some way, also the work of a peeved insurance man of our vicinity which I refused to have issue a policy. Your agent called and all questions were answered properly. There was no going around the bush—so to speak. In regard to my son. He will be 16 years of age Jan. 9th '38. He has a legal license to drive that car—Neither does he drive to school. The party interfering is a year behind. My boys drove to a neighborhood high school and carried students last year. (36) But not this car—In regard to who owns the car—I think is going a little too far—Our own money has paid for that car and it's nobody's business. The car is in my name. No finance has anything to do with it. Would like to ask you a question: Were you responsible for a person calling on neighbors to inquire about our family? If you want information call directly on us—We will give you all the information you want. We are honest people and my children are well respected. They have driven many miles and not the slightest accident as yet. In regard to

a trailer used—We use my father's trailer very little in the fruit season. Especially when our load is too large for the truck. (Some more outside information.)  I'm more than disgusted with this letter and hope I've made everything plain.  There are plenty begging to have our insurance.

"Yours truly,
"MRS. MAMIE HIRSCH
"Coloma, Mich."

This communication was received by the company on December 3, 1937. Nothing was done by the company upon its receipt. On the night of December 5, 1937, Mrs. Hirsch's car, driven by her son, struck and instantly killed Ray Phillips, and the company was notified by telegram from Mrs. Hirsch on December 6th. The special administratrix of the Phillips' estate sued Mrs. Hirsch and her husband in an action in damages for negligence and recovered a judgment in the amount of $4,000 and costs on June 8, 1938. The administratrix then garnisheed the insurance company, and on issue joined, the trial court held that Mrs. Hirsch had terminated the contract of insurance before the occurrence of the accident. The court denied plaintiff's motion for entry of judgment against the insurance company as garnishee defendant, and entered a judgment of no cause of action; from which the administratrix of the estate of Ray Phillips appeals.

It is the claim of appellant that Mrs. Hirsch did not intend to cancel the policy, and that the language used in her communication of December 2, 1937, to the company was not an unqualified cancellation; that it constituted only a threat to cancel. It is further claimed that it was incumbent upon the company to take some action accepting or declining her proposition, either by sending back the policy or the

money paid for the premium. Whether the communication of Mrs. Hirsch voided the agreement of protection of the insurance company depends upon the intent of the insured; and such intent must be gleaned from the whole instrument. The words of the letter: "Kindly return the money and keep your policy. I have waited long enough for the same," taken alone, would indicate that Mrs. Hirsch intended the insurance to end. But in our opinion the letter, taken as a whole, is susceptible to a different interpretation.

The insured's letter was in response to a request for information. In brief, the company asked whether Mrs. Hirsch was the sole owner of the car, and referred to the fact that the company knew it was being financed. Mrs. Hirsch answered this question in her remarks which were typed in the margin of the letter—that this was not true—and then later, after her statement requesting return of her money, answered that her own money had paid for the car; that the car was in her name, and that "no finance has anything to do with it." There would be no reason for answering this question in such a detailed manner, if Mrs. Hirsch previously intended to cancel the insurance and void the protection.

In response to the company's statement that it was their understanding that the car was driven by her youngest son, age 14, and the inquiry as to whether this understanding was correct, she answered that her son would be 16 years old January 9, 1938, and had a license to drive the car. This information was furnished subsequent to the statement requesting return of her money. If she had previously intended to end relations with the company, her furnishing of this information was incongruous with such a determination.

In reply to the statement of the company that it would be necessary to give them permission to exclude coverage while the car was being driven by fellow students of her son, or while fellow students were being carried in the car, it appears from the foregoing that Mrs. Hirsch answered in some detail. She stated that the boy did not drive to school; that "my boys drove to a neighborhood high school and carried students last year. * * * But not this car." There appears no reason to complain of the completeness of her answer in this regard. In any event, the company could have issued a policy excluding liability when the car was driven by fellow students or while they were being carried. If she had not already bargained for such special protection, there was no necessity for giving permission to exclude it.

With regard to insurance when the car was used in connection with a trailer, the company stated that a standard policy did not provide such protection and that in order to change her policy, additional premium payments would be necessary. For this purpose, the company included a questionnaire and asked information as to the names, addresses, and ages of persons who would drive the car with a trailer. However, at no time did Mrs. Hirsch request such a change in her policy. Nevertheless, she answered in the margin of the company's letter that whoever drove the car was "legalized" to do so, and gave the ages requested. She further informed the company that she used her father's trailer very little in the fruit season. Not having requested trailer protection, there was no need for her to answer the questionnaire. She further complained of some person calling on her neighbors, inquiring about the family, and said: "If you want information, call directly on us—We will give you all the information

you want." The fact that the above information was given and that she advised the company that if any further information was needed, to call upon them, is strongly persuasive that Mrs. Hirsch did not intend, by her previous request, to end relations with the company and to cancel forthwith the protection she was enjoying under the company's binder at the time she wrote the letter.

It seems to us that the action of the company in the matter is suggestive of a correct interpretation of the transaction; that it was not considered that Mrs. Hirsch's letter was a cancellation; but that the company rejected the application, and that such rejection did not take place until after the happening of the accident.

Upon receipt of her letter, the company took no steps to return the money, or to cancel the insurance. After notification of the accident, however, the company took from its files an instrument referred to as a "daily" and an "application," embodying the terms of the proposed policy, and stamped it "rejected," with a pencil notation of the date: "12-6-37." On December 7, 1937, the company returned the full amount of the premium payment to Mrs. Hirsch, with a letter stating that if she desired a policy in the future, under certain circumstances, it would be glad to consider the application. Later, on January 25, 1938, after Mrs. Hirsch had been sued, the company wrote her and stated that it had received a copy of the summons, and advised her that when it had received her communication, heretofore discussed, "we decided to decline the insurance applied for." Thereafter, on April 19, 1938, the attorneys for the company further advised Mrs. Hirsch that after receiving her letter, *the company had decided to decline the insur-*

*ance,* and had returned the entire amount of her policy payment. In none of these communications did the company ever claim that Mrs. Hirsch had cancelled the insurance by her letter of December 2, 1937. On the other hand, its sole claim as evidenced by its letters was that it had decided to "decline the insurance," and as further evidence of such determination and action, its records show that it rejected the application, rather than that Mrs. Hirsch cancelled the insurance. Examining the communication of Mrs. Hirsch, we are of the opinion that she did not intend to cancel, by her letter, the insurance protection. The furnishing in considerable detail the information requested by the company and her advice to call upon her for further information are at variance with the claim now made that she intended to void, and did void, the protection under the binder; and reasonably considered, is inconsistent with such a conclusion. Under the circumstances of this case, we are of the opinion that under the binder the insurance protection was effective until rejected by the insurance company; and that such rejection, not occurring until after the accident, does not relieve the company from liability.

The judgment of the trial court is reversed, and plaintiff's motion for judgment against garnishee defendant is ordered entered, with costs to plaintiff.

Bushnell, C. J., and Sharpe, Potter, Chandler, North, Wiest, and Butzel, JJ., concurred.