STATE AUTOMOBILE MUTUAL INSURANCE COMPANY v
BABCOCK

1. INSURANCE—CONTRACTS—PRINCIPAL AND AGENT—AUTHORITY.

Insurance companies are bound by all acts and contracts made by their agents which are within the apparent scope of authority conferred upon them; such authority, while not actually granted, is that which insurance companies knowingly permit agents to exercise or which is held out to the public and is not narrowed by limitations not communicated to the person with whom the agent deals.

2. INSURANCE—CONTRACTS—BINDERS—COVERAGE—PRINCIPAL AND
   AGENT—AUTHORITY—ESTOPPEL.

An insurance company is estopped from denial of coverage where its agent had apparent authority to issue a binder, he was in possession of binders and letterheads showing him to be the insurer's agent, he had application blanks which set out no restrictions on his powers, he was licensed and registered as an insurance agent in the state where there was a holding out of ability to transact business, and the insured and the Secretary of State relied on the agent's authority and ability to extend coverage.

3. INSURANCE—CONTRACTS—BINDERS.

An insurance binder is a contract of temporary insurance to be effective insurance coverage until a formal policy is drafted and issued, is evidence of a contractual obligation to be expressed in complete written form at a later date, is used when a policy is not immediately issued to evidence that insurance coverage attaches at a specific time, and continues until the policy is issued or the risk is declined and notice thereof is given.

REFERENCES FOR POINTS IN HEADNOTES
[1] 43 Am Jur 2d, Insurance §§ 204–206.
[2–5, 7] 43 Am Jur 2d, Insurance §§ 165, 206, 216 *et seq.*
[6] 43 Am Jur 2d, Insurance § 51 *et seq.*
[7] 7 Am Jur 2d, Automobile Insurance § 3.
[8] 43 Am Jur 2d, Insurance § 404 *et seq.*

4. INSURANCE—CONTRACTS—BINDERS.

The rights and liabilities of parties to a valid insurance binder are determined by reference to the conditions of the policy expected although that policy may never issue, and all ordinary provisions and exclusions of policies issued to cover similar risks will be read into the temporary binder unless there was an express agreement at the time of the issuance of the binder which would make such provisions and exclusions inconsistent with the intent of the binder agreement.

5. INSURANCE—CONTRACTS—BINDERS.

A binder of insurance is an insurer's bare acknowledgment of its contract to protect the insured against casualty of a specified kind until a formal policy can be issued, or until the insurer gives notice of its election to terminate.

6. INSURANCE—CONTRACTS—STATUTES—MANDATORY STATUTORY PROVISIONS.

Insurance contracts are subject to statutory regulation and are construed in light of statutory requirements; mandatory statutory provisions are read into insurance contracts.

7. INSURANCE—CONTRACTS—BINDERS—MOTOR VEHICLE INSURANCE—CANCELLATION—STATUTES—NOTICE.

An insurer who has issued a binder and certified to the bureau of motor vehicles that the insured has obtained insurance is barred from asserting that the coverage failed to attach on the date of issuance, or that it failed to continue in force during the period in which the certificate of insurance remains uncancelled, that is, until the insurer has given the statutory notice required for cancellation.

8. INSURANCE—CASUALTY INSURANCE—CANCELLATION—STATUTES—NOTICE.

A valid binder of casualty insurance, excepting workmen's compensation, but including all classes of motor vehicle coverage, is subject to all statutory provisions; statutory cancellation notice provisions require a written ten-day notice of cancellation addressed to the insured (MCLA 500.3020).

Appeal from Wayne, William J. Weipert, Jr., J. Submitted Division 2 April 9, 1974, at Detroit. (Docket No. 17815.) Decided June 26, 1974. Application for leave to appeal dismissed with prejudice by stipulation.

Complaint by State Automobile Mutual Insur-

ance Company against Dale Babcock and other individual defendants and Progressive Casualty Insurance Company and Boss Agency, Inc. for a declaratory judgment on the validity of a binder of insurance. Summary judgment for defendants Progressive and Boss. Plaintiff appeals. Reversed and remanded for further proceedings.

*Conklin & Maloney,* for plaintiff.

*Taub & Still, P. C.,* for defendant Progressive Casualty Insurance Company.

Before: J. H. GILLIS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. On June 8, 1970, Dale Babcock, a young soldier on leave from Viet Nam, purchased a used car from Quality Motors, a used car dealer in Monroe, Michigan. Realizing that in order to secure license plates for the car insurance was necessary, he went to the Boss Insurance Agency on that day and spoke to Mr. Robert Boss personally. The Boss Agency was a licensed insurance agency and registered to do business for the Progressive Insurance Group. Babcock explained to Mr. Boss that he desired to purchase insurance for his car and answered questions put to him by Mr. Boss. An automobile insurance application with the letterhead of Progressive Casualty Insurance Company, 3600 Euclid Avenue, Cleveland, Ohio 44115, was filled out by Mr. Boss and signed by Mr. Babcock. This application specified coverage for bodily injury, liability of $10,000 for each person and $20,000 for each accident and property damage liability of $5,000 for each accident. The

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

period of time for coverage on the application was six months. Mr. Babcock had informed Mr. Boss that he desired insurance only for 30 days, which was the period of his leave. The application called for a total premium of $242. Mr. Boss received from Babcock a check for $121 and issued a receipt. Babcock was given a certificate of insurance which he took to an office of the Secretary of State. Thereafter, he was issued license plates and vehicle registration.

STATE OF MICHIGAN

(Name of Insurance Company or Companies operating as a Group)

Progressive Casualty Ins. Co.

CERTIFICATE OF INSURANCE

an authorized Michigan insurer, certifies that it has issued a policy complying with the Motor Vehicle Accident Claims Act applicable to the described motor vehicle.

Year  1962 Oldsmobile  Make  628N21648  Vehicle No.

TO:
Dale R. Babcock
127 W. 8th St.
Monroe, Michigan

(NAME OF INSURED)

AL 6885 (Ed. 11-65)    UNIFORM PRINTING & SUPPLY DIV.

REC. A-804    JUN11 1970

POLICY NO.    Bound Application NPH 873

EXPIRATION DATE    7-8-70

By _____ Authorized Representative

on this    8th    June    1970
            Day    Month    Year

NOTICE—This is not a guarantee that the policy will remain in effect until the stated expiration date.

READ CAREFULLY PENALTY FOR FALSE CERTIFICATION

Any person who furnishes false evidence of insurance upon the issuance or transfer of registration under this section is guilty of a misdemeanor. In addition his operator's or chauffeur's license or motor vehicle registration, or both, may be suspended by the secretary for a period of not more than 1 year. (Sec. 3, Sub-sec. 4, Act 198, P.A. 1965)

It is the obligation of the owner to maintain proper insurance coverage and in the event his insurance is terminated for any reason he must (1) pay the appropriate uninsured motor vehicle fee or (2) obtain insurance before operating the vehicle upon the highways of this state. (Sec. 3, Sub-sec. 5, Act 198, P.A. 1965)

THIS FORM MAY BE PRESENTED AS EVIDENCE OF INSURANCE WITH YOUR APPLICATION FOR LICENSE PLATES AT ANY SECRETARY OF STATE LICENSE PLATE BRANCH OFFICE.

(Emphasis supplied.)

On June 13th Babcock received a copy of a letter dated June 11, 1970, under the letterhead of the Progressive Insurance Company, addressed to the Boss Agency, which stated: "We are returning the enclosed application as we are not in a position to issue a policy at this time". The letter further stated that: "By our returning the application, we are relieving ourselves of any binders placed on this applicant and all coverages previously considered bound are hereby null and void". After receipt of this copy, Babcock contacted the Boss Agency and requested advice in light thereof. He was informed that the agency would contact the Progressive Company and indicated to Babcock that he should refrain from driving the car, if possible.

On June 14th, Babcock, driving his newly purchased automobile, was involved in an accident in Monroe County. The second vehicle involved was driven by William C. Lewis and was owned by passengers Rosetta Brown and Willie S. Brown. Rosetta Brown and Willie S. Brown suffered injuries and damages. Also, due to injuries resulting from the accident, William C. Lewis died. The Lewis-Brown vehicle was insured with plaintiff, State Automobile Mutual Insurance Company. Among the coverages provided in the policy with plaintiff was "uninsured motorists coverage". This coverage provided that injury or death resulting from an accident with an uninsured motorist who was at fault was covered by State Automobile Mutual up to the policy limits.

The Browns and Charles Lewis, successor administrator of the estate of William Lewis, made claim upon plaintiff under the uninsured motorists coverage based upon the assertion that Babcock was at fault and that he was not insured. Plaintiff took

the position that Babcock was, in fact, insured at the time of the accident, carrying public liability insurance with defendant Progressive Casualty Insurance Company; and, therefore, the uninsured motorists coverage under the Brown policy would not apply. On this ground, plaintiff instituted suit for declaratory judgment, naming as defendants Babcock, the Browns, Laura Lewis, and the Progressive Casualty Insurance Company. Charles Lewis was substituted as defendant for Laura Lewis. Progressive thereafter filed a third-party complaint against the Boss Agency, admitting that Boss was its agent, but alleging that Boss had violated the agency agreement and instructions in the rating manual by issuing temporary coverage to Babcock. Progressive sought reimbursement from Boss for any judgment which might be rendered against it.

At a hearing on April 27, 1973, the trial judge was faced with numerous motions, viz.: (1) State Automobile Mutual's motion for summary judgment against all the defendants, praying that the court hold that Progressive had valid public liability insurance on the Babcock car at the time of the accident, (2) a motion for accelerated judgment by the Boss Agency on the third-party complaint of Progressive, (3) a motion by the Browns to file counterclaims against both insurance companies, (4) a motion by Laura Lewis for permission to file a counterclaim against both insurance companies, and (5) a motion by Progressive against Boss for summary judgment, if State Automobile's motion for summary judgment was granted. The trial judge held that there was no policy of insurance by Progressive issued or in force or effect on the day of the accident. He found that there had not been a "binding binder" but rather merely an application for insurance. Emphasis was placed on

the fact that Babcock admitted that he had notification that the application for insurance had been declined, yet continued to drive. The court denied plaintiff's motion, *sua sponte* rendered summary judgment of dismissal in favor of Progressive and summary judgment of dismissal in favor of Boss. Thereafter, the parties stipulated, and the trial judge ordered, that the motion for summary judgment of Progressive against Boss be withdrawn.

Plaintiff here appeals the dismissal of its motion for summary judgment and sets out seven issues. Defendant Progressive answers that, in reality, there are only two issues involved. For purposes of our review here, we consider the case on the basis of three questions: (1) was there authority to issue coverage?; (2) was Babcock issued a binder of insurance?; and (3) was the coverage of Progressive in effect at the time of the accident?

I

In its third-party complaint against the Boss Agency, Progressive admitted that the Boss Agency was an agent for sale of insurance through the Progressive Companies; however, it claimed that Boss exceeded proper authority in not abiding by guidelines set out in the company manual. The pertinent part of the rating manual provides: "COVERAGE CANNOT BE BOUND on a SERVICEMAN, unless he is: 1. At least 21 years of age and married, or 2. If single, 25 years of age or older, and 3. Stationed in the state, for the policy term, in which the producing agent is resident".

Insurance companies are bound by all acts and contracts made by their agents which are within the apparent scope of authority conferred upon them; such authority, while not actually granted,

is that which insurance companies knowingly permit agents to exercise or which is held out to the public. 43 Am Jur 2d, Insurance, § 156, p 212; 12 ALR3d, Temporary Automobile Insurance, § 3, p 1309. In *Ames v Auto Owners Insurance Co,* 225 Mich 44, 49; 195 NW 686, 687 (1923) the Court wrote:

"The general public transact their business with insurance companies through representatives of such companies without actual notice of any limit upon the authority of such representatives. The agent is usually clothed with at least apparent authority to transact the business in hand, *i.e.,* the effectuating of insurance. In *Tubbs v Insurance Co,* 84 Mich 646; 48 NW 296 (1891), we quoted with approval the following language from *Insurance Co v Wilkinson,* 80 US (13 Wall) 222; 20 L Ed 617 (1871):

" 'The powers of the agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.'

"See, also, *Pollock v [German Fire-] Insurance Co,* 127 Mich 460; 86 NW 1017 (1901); *Greenwich Ins Co v Waterman,* 54 F 839 (CA 6, 1893); *Walsh v Insurance Co,* 30 Iowa 133, 145; 6 Am Rep 664 (1870). In the last cited case it was said:

" 'The defendant cannot be permitted to escape liability from the acts or representations of an agent in the course of its business which he is authorized to transact, whereby a party dealing with it is induced to pay money in the belief that he will receive security in return. The agent of defendant, as we have seen, was empowered to receive payments made to defendant in the course of its business. Plaintiff could well rely upon the representations of the agent that the payment to him was the regular course to pursue in order to obtain the permit required. If the acts of defendant and its agent induced the belief on the part of plaintiff that the permit was issued upon the payment of the money to the agent, defendant is estopped to deny it.' "

See, also, *Rorick v State Mutual Rodded Fire Ins Co,* 263 Mich 169, 171–172; 248 NW 584, 585 (1933); and, *Voss v American Mutual Liability Ins Co,* 341 SW2d 270, 275 (Mo App, 1960). Among other indicia which have resulted in a finding of apparent authority are the agent's possession of binders and letterheads showing him to be the insurer's agent and application blanks which set out no restriction on the agent's powers. 12 ALR3d, *supra,* § 18, pp 1333–1334. The Boss Agency filled out an application under the letterhead of the Progressive Companies, was licensed and registered as an insurance agent in the state and there was a holding out to the public of ability to transact insurance business. It is clear that both Babcock and, secondarily, the Secretary of State relied upon the Boss Agency's authority and ability to extend coverage to Babcock, in that license plates and registration were issued to Babcock and he drove his newly purchased automobile. Moreover, in situations such as this, actual authority is not necessary, apparent authority will suffice to estop denial of coverage.

## II

The plaintiff asserts that when Babcock left the Boss Agency he was covered through a binder of insurance. The defendant asserts that what transpired amounted to nothing more than a mere application for insurance. The trial court found that what had been issued to Babcock was in effect not a binding binder.

An application for automobile insurance is a form containing various questions as to the applicant's name, age, occupation, description of the automobile, other matters and appropriate spaces

for coordinate information. *Voss v American Mutual Liability Ins Co, supra,* p 274.

> "*An insurance binder is a contract of temporary insurance to be effective insurance coverage until a formal policy is drafted and issued. It is not a complete contract in a sense, but is evidence of the existence of a contractual obligation to be expressed in complete written form at a later date. Lester v Century Indemnity Co,* 356 Pa 15; 50 A2d 678 (1947). *A binder is used when a policy is not immediately issued to evidence that insurance coverage attaches at a specific time and continues until the policy is issued or the risk is declined and notice thereof is given. Harris v Sachse,* 160 Pa Super 607; 52 A2d 375 (1947). Like all contracts, a binder requires agreement of the minds of the parties and must have in contemplation the terms to be incorporated later in the written policy." (Emphasis supplied.) *Carideo v The Phoenix Assurance Co of New York,* 317 F Supp 607, 610 (ED Pa, 1970).

See, also, 7 Am Jur 2d, Automobile Insurance, § 3, pp 295–296. A binder may be written or oral and founded upon words or deeds of an agent. The common expression is "you are covered", but it has also been said that "a receipt for premiums may constitute a binder if the circumstances would lead a reasonable man to conclude that such was the intention". 12 ALR3d, *supra,* § 5(b), p 1314, citing *Mackwiz v Resolute Ins Co,* 123 F Supp 142 (D Alas, 1954). Such contract of temporary insurance is construed as subject to the terms of the policy to be issued or the policy ordinarily used by the company. 44 CJS, Insurance, § 230(e), p 960. In *Bankers Indemnity Ins Co v Pinkerton,* 89 F2d 194, 197 (CA 9, 1937) it was said: "The necessary elements to effectuate an oral contract of insurance are: (a) Subject-matter; (b) the risk; (c) premium; (d) duration of the risk; (e) the amount of insurance". In some sources, an additional ele-

ment is the identity of the parties. 43 Am Jur 2d, *supra,* § 217, p 276; 12 ALR3d, *supra,* § 4, p 1310. The essential elements constituting a valid automobile insurance binder in this case have been clearly met.[1]

The rights and liabilities of parties to these informal preliminary contracts are determined by reference to the conditions of the policy expected, although that policy may never issue. Vance on Insurance (3d ed), § 36, p 219. Judge VAN VALKEN-BURG has written:

"All ordinary provisions and exclusions of policies issued to cover similar risks will be read into the temporary binder, *unless there was an express agreement at the time of the issuance of the binder which would make such provisions and exclusions inconsistent with the intent of the binder agreement.* See *Robinson v United States Benevolent Society,* 132 Mich 695; 94 NW 211 (1903); *State Automobile Mutual Insurance Co v Lloyd,* 54 Tenn App 587; 393 SW2d 17 (1965); *Jennings v Illinois Automobile Club,* 319 Ill App 587; 49 NE2d 847 (1943); *Salisbury v Hekla Fire Insurance Co,* 32 Minn 458; 21 NW 552 (1884)." (Emphasis supplied.) *Harmon v American Interinsurance Exchange Co,* 39 Mich App 145, 148; 197 NW2d 307, 309–310 (1972).

A binder of insurance is in effect until properly rejected by the insurance company. *Cf: Phillips v Hirsch,* 292 Mich 693, 701; 291 NW 196, 199 (1940).[2]

Thus, we here conclude that Babcock was issued a binder of insurance which "is insurer's bare acknowledgment of its contract to protect the

---

[1] For a discussion of the differences between an application for insurance and an insurance binder, generally, *see,* 43 Am Jur 2d, Insurance, § 216, p 275.

[2] Binders are not contracts in an ordinary sense but rather are contracts of adhesion between parties not equally situated. 43 Am Jur 2d, Insurance, § 217, p 276.

insured against casualty of a specified kind until a formal policy can be issued, or until insurer gives notice of its election to terminate". *Moore v Adams Electric Co, Inc,* 264 NC 667, 673; 142 SE2d 659, 664 (1965).

## III

Insurance contracts are subject to statutory regulation and are construed in light of statutory requirements, *i.e.,* mandatory statutory provisions are read into insurance contracts. *Galkin v Lincoln Mutual Casualty Co,* 279 Mich 327, 331; 272 NW 694, 695 (1937); *Chrysler Corp v Hardwick,* 299 Mich 696, 700; 1 NW2d 43, 45 (1941); *Wendel v Swanberg,* 384 Mich 468, 478; 185 NW2d 348, 352–353 (1971); *Raptis v Safeguard Ins Co,* 13 Mich App 193, 197; 163 NW2d 835, 836 (1968); *Dasen v Frankenmuth Mutual Ins Co,* 39 Mich App 582, 584; 197 NW2d 835, 836 (1972); *Bibb v Dairyland Ins Co,* 44 Mich App 440, 445; 205 NW2d 495, 498 (1973).

At the time of the accident, the pertinent statutory language read:

"No policy of casualty insurance, excepting workmen's compensation, but including all classes of motor vehicle coverage, shall be issued or delivered in this state by any insurer authorized to do business in this state *for which a premium or advance assessment is charged,* unless there shall be contained within such policy a provision whereby the policy may be cancelled at any time at the request of the insured, in which case the insurer shall, upon demand and surrender of the policy, refund the excess of paid premium or assessment above the customary short rates for the expired time; and whereby *the policy may be cancelled at any time by the insurer by mailing to the insured at his address last known to the insurer or its authorized agent, with postage fully prepaid, a 10 days' written notice of*

*cancellation* with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand and the notice of cancellation shall state that the excess premium (if not tendered) will be refunded on demand. The cancellation shall be without prejudice to any claim originating prior thereto. The mailing of notice shall be prima facie proof of notice. Delivery of such written notice shall be equivalent to mailing. *A notice of cancellation of a motor vehicle liability policy shall be accompanied by a statement that the insured must not operate or permit the operation of the motor vehicle to which notice of cancellation is applicable, or operate any uninsured motor vehicle, without first obtaining liability insurance or paying the $35.00 uninsured motor vehicle fee, as required by the Michigan motor vehicle accident claims act."*[3] (Emphasis supplied.) 1967 PA 202; MCLA 500.3020; MSA 24.13020.

In the present case, the notice of rejection was not mailed to Babcock but rather to Boss. Further, the letter to Boss did not specify to Babcock that he should not operate or permit the operation of the vehicle. Further, accepting as the day from which notice would run the date on the letter, *i.e.,* June 11th, the ten-day period had not run at the time of the accident.

"Under a compulsory automobile insurance law, once an insurer issues a binder and certifies to the bureau of motor vehicles that the insured has obtained insurance, it is barred from asserting that the insurance coverage failed to attach on the date of issuance or that it failed to continue in force thereafter during the period in which the certificate of insurance remains uncanceled, *[sic]* that is, until the insurer has given the statutory

---

[3] MCLA 500.3020; MSA 24.13020, being 1956 PA 218 as amended by 1967 PA 202, but prior to the effective date of amendatory language of 1971 PA 210. This case arose before the effective date of "no-fault" automobile insurance, 1972 PA 294; MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.*

notice required for cancellation." 7 Am Jur 2d, Automobile Insurance, § 3, p 296.

We find that: Babcock was issued a binder of insurance, based upon the apparent authority of the Boss Agency; the binder was subject to the terms and conditions of the policy expected to be received; one condition is that all relevant statutory provisions are read into the agreement; and, the statutory notice provisions had not been fulfilled, *i.e.,* ten days notice. Thus, we rule that Babcock was insured by Progressive Casualty at the time of the accident. This conclusion is the same as reached by the Tennessee Court of Appeals.

In *State Automobile Mutual Ins Co v Lloyd,* 54 Tenn App 587; 393 SW2d 17 (1965), cited with approval in *Harmon, supra,* p 148; 197 NW2d 309–310, it was asserted that State Automobile Mutual had issued a binder of insurance. State Automobile Mutual admitted that it had issued a verbal binder but that it had been cancelled upon receipt of a letter to the insurance agent advising that the binder was cancelled upon receipt of that letter. The trial court had held that 10 days written notice was necessary to cancel the binder and thus the binder was effective at the time of the accident giving rise to the case. The ten-day provision was provided by the insurance company in its standard policy. The Court of Appeals held that the ten-day written notice was necessary to cancel the binder and wrote at pp 606–607; 393 SW2d 25–26:

"On consideration of all the cases relied upon by the parties, and based upon our own research, it is our opinion that where there is nothing more said in an oral binder than that which leads the party to believe they are insured from the moment the binder is issued, whether it be oral or written, we hold that without

implied or expressed modifications showing that the parties did not so intend the binder bind the particular hazard insured against, in the absence of some statutory provision otherwise effective, in accord with the standard policy provisions which usually issued in event the bindee is protected by the issuance of a policy contract.

"We feel that this must be the correct conclusion because the cancellation right and requirement of notice of such cancellation is for the benefit of the insured to give insured time to obtain other insurance or protection. Appleman on Insurance, Vol 6, p 149, 1964 pocket parts, Section 4182. This is true of all of our cases in Tennessee that deal with the question for 'whose benefit' the right to cancel is authorized by the insurer."[4]

Moreover, our decision is correct in light of the public policy which requires that liability insurance must be written in conformity with statutory requirements and the fact that the Legislature intended that no automobile should be registered in this state unless specified requirements have been met, *viz.,* either a policy of liability insurance or payment of the uninsured motorists vehicle fee. *Allstate Ins Co v Motor State Ins Co,* 33 Mich App 469, 473; 190 NW2d 352, 354 (1971); *Celina Mutual Ins Co v Preferred Risk Mutual Ins Co,* 51 Mich App 99, 102; 214 NW2d 704, 705 (1974). To hold other than we have, would be to condone situations wherein motorists without liability insurance or without coverage from the uninsured motorists fund were on the streets and highways of this state; this conclusion would be incongruous as the vehicle here involved in the accident was, in the first instance, registered for use in this state on the basis that it was, in fact, insured as evidenced

---

[4] As to the purpose of notice requirement, *see, also, Raptis v Safeguard Ins Co,* 13 Mich App 193, 202; 163 NW2d 835, 839 (1968) (LEVIN, J., *dissenting)* and *Moore v Adams Electric Co, Inc,* 264 NC 667, 673; 142 SE2d 659, 664 (1965).

by a certificate of insurance. See MCLA 257.518; MSA 9.2218; MCLA 257.1104(3); MSA 9.2804(3).

Reversed and remanded for further proceedings based upon this opinion.

All concurred.