# STATE OF MICHIGAN

# COURT OF APPEALS

---

LAWRENCE HOLMAN,

        Plaintiff-Appellant,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Intervening Plaintiff,

v

YAHYA MOSSA- BASHA, also known as
YAHYA MOSSA, also known as YAHYA
BASHA, and FARM BUREAU GENERAL
INSURANCE COMPANY OF MICHIGAN,

        Defendants-Appellees.

UNPUBLISHED
November 29, 2018

No. 338210
Oakland Circuit Court
LC No. 2015-149786-CZ

---

LAWRENCE HOLMAN,

        Plaintiff-Appellant,

and

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Intervening Plaintiff,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

No. 338232
Oakland Circuit Court
LC No. 2015-150608-NF

---

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

-1-

PER CURIAM.

Plaintiff appeals as of right an order denying his motion for summary disposition and granting defendants' respective motions for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).[1] We affirm.

## I. BACKGROUND FACTS

This case arises out of an automobile insurance transaction between plaintiff and defendant Farm Bureau General Insurance Company of Michigan. Farm Bureau generally requires an insurance policy applicant to have a prior automobile insurance policy for a period of six months immediately preceding the submission of his or her application for insurance. Accordingly, if an applicant does not have insurance for the entire six-month period before the current application date, he or she is not eligible to receive an insurance policy with Farm Bureau. While limited exceptions exist, none apply here. An applicant is also ineligible for an insurance policy if Farm Bureau determines that he or she drove an automobile without the necessary insurance.

In June of 2013, plaintiff purchased a used Chevy Malibu and an automobile insurance policy through AAA. The AAA policy began on June 12, 2013, and expired on December 12, 2013. According to plaintiff, he held title to the Malibu and Jamie Williams, his girlfriend at the time, was listed as another driver on the AAA policy. Plaintiff and Williams agreed that plaintiff would make payments on the Malibu and Williams would pay for the insurance. Plaintiff and Williams separated in February 2014, and Williams possessed the Malibu from that time until August 2014, when plaintiff took the Malibu back after learning that Williams had not been paying the insurance premiums. Plaintiff testified that he looked into obtaining insurance for the Malibu after he took it back from Williams, but did not ultimately secure a new policy. Instead, he continued to drive the Malibu "a couple times" until it was vandalized and rendered inoperable in October 2014. Plaintiff affirmed that the Malibu was never repaired for lack of insurance and explained that the vehicle was repossessed in October or November 2014.

On December 30, 2014, plaintiff purchased a 2007 Mercury Mountaineer. In order to secure insurance coverage, plaintiff spoke on the telephone to Farm Bureau sales agent Jonathan Heinzman, to whom plaintiff provided the required information for obtaining a policy. Heinzman completed an application for a six-month automobile insurance policy, which plaintiff signed on or about December 31, 2014. In pertinent part, the application asked, "Has the Applicant or a member of the Applicant's household driven or moved any vehicle owned by the Applicant which has NOT had the required insurance in force for the preceding six months?"

---

[1] Both lower court actions involved in this appeal arose from the same motor vehicle accident involving plaintiff and defendant Yahya Mossa-Basha, and the proceedings were consolidated below. This Court likewise consolidated these appeals to advance the efficient administration of the appellate process. *Holman v Mossa-Basha*, unpublished order of the Court of Appeals, entered June 22, 2018 (Docket Nos. 338210 and 338232).

Plaintiff answered this question in the negative and referred to AAA policy number 047wna20140701, with an expiration date of January 15, 2015.[2] Plaintiff received a "CERTIFICATE OF NO-FAULT INSURANCE" from Farm Bureau with an effective date of December 30, 2014, and an expiration date of January 29, 2015. The certificate included the following statement:

> NOTICE: This certificate is not a guarantee that the policy is in effect or will remain in effect. The stated dates apply only if the premium due is paid by the established due dates(s) [sic] and only so long as the policy is not cancelled for conditions as stated in the policy.

On January 30, 2015, Farm Bureau sent plaintiff a letter explaining that his application could not be accepted because it was incomplete and that the initial payment he made at the time he submitted the application was being refunded. The letter invited plaintiff to resubmit a completed application for consideration, but also stated that "[a]t the present time, you do not have any family auto insurance with Farm Bureau General Insurance Company." According to Farm Bureau's underwriting representative, Suzanne Reed, the reason the application was considered incomplete was because it was missing plaintiff's proof of prior insurance.

According to plaintiff, he had not yet received the January 30, 2015 letter before he was involved in an automobile accident with defendant Yahya Mossa-Basha on February 5, 2015. Plaintiff sustained extensive injuries in the accident and remained hospitalized in a medically induced coma for several weeks. Once plaintiff regained consciousness, he learned of the January 30, 2015 letter.

On October 23, 2015, plaintiff filed a lawsuit for declaratory relief under MCR 2.605, seeking a declaration that he was insured by Farm Bureau at the time of the accident. Plaintiff initiated a second action on December 15, 2015, claiming entitlement to personal protection insurance (PIP) benefits arising from the February 5, 2015 accident. In summarily dismissing plaintiff's claims, the circuit court concluded that Farm Bureau never issued plaintiff an insurance policy, and that the certificate of insurance plaintiff received was merely a binder of insurance, i.e., "an agreement which is issued pending the issuance of a policy," which was intended to enable plaintiff to register the Mountaineer with the Secretary of State. The circuit court also noted that the certificate indicated that it did not guarantee that a policy was "in effect or [would] remain in effect." The circuit court further reasoned that even if the certificate of insurance was a short-term policy, it expired by its own terms on January 29, 2015, so the statutory notice described in MCL 500.3020(1)(b) was not required.

---

[2] Plaintiff testified that he provided Heinzman with a copy of his AAA declaration page after speaking with him on December 30, 2014. The declaration page reflected a policy number of AUTO 48900256 and a coverage period of June 12, 2013, to December 12, 2013. Plaintiff denied knowledge of where the information included in the application came from. Heinzman testified that plaintiff provided the policy number and expiration date referenced in the application in September 2014, when he was inquiring about obtaining insurance for his Malibu.

## II. ANALYSIS

We review "the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Id*. "[A] motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Accordingly, "the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. All reasonable inferences must be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). The movant is entitled to judgment as a matter of law "[i]f the proffered evidence fails to establish a genuine issue regarding any material fact . . . ." *Joseph*, 491 Mich at 206.

### A. CERTIFICATE OF INSURANCE

Plaintiff first argues that the certificate of insurance he received from Farm Bureau was a binder that provided temporary insurance coverage affording the same protections as a formal no-fault insurance policy and remained in effect until "properly rejected by the insurance company." Therefore, relying on MCL 500.3020(1)(b), plaintiff argues that Farm Bureau could not cancel his coverage without providing a 10-day statutory notice of cancellation. Plaintiff contends that the January 30, 2015 letter constituted a notice of cancellation, thus continuing his limited coverage for 10 days. Accordingly, plaintiff avers that he was insured on February 5, 2015. We disagree.

"An insurance binder is 'a contract of temporary insurance pending issuance of a formal policy or proper rejection by [the insurer].' " *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 721; 635 NW2d 52 (2001), quoting *Blekkenk v Allstate Ins Co*, 152 Mich App 65, 68; 393 NW2d 883 (1986) (alteration in original). "Binders are issued in automobile insurance situations to allow the applicant to use the car while awaiting a decision from the insurance company whether it will insure the driver." *Jackson v Transamerica Ins Corp of America*, 207 Mich App 460, 462; 526 NW2d 31 (1994).

MCL 257.520(k) provides:

> Any carrier authorized to issue motor vehicle liability policies may, pending the issuance of such a policy, execute an agreement, to be known as a "binder", or may, in lieu of such a policy, issue an indorsement to an existing policy. Every such binder or indorsement shall be subject to the provisions of this section and shall be construed to provide indemnity or insurance in like manner and to the same extent as a motor vehicle liability policy.

"In general, coverage under a binder cannot be terminated until the applicant receives notice of rejection." *Jackson*, 207 Mich App at 463. By statute, a "policy may be canceled at any time by the insurer by mailing . . . a not less than 10 days' written notice of cancellation . . . ." MCL 500.3020(1)(b); but see *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 238; 507

NW2d 741 (1993) ("While the policy was in effect, it could not be canceled without a notice of cancellation . . . . However, after the period of coverage had expired, the policy was no longer in effect and a notice of cancellation was not required."). Further, MCL 257.328(2) pertinently provides that "[a] certificate of insurance . . . is prima facie evidence that insurance is in force for the motor vehicle described in the certificate of insurance *until the expiration date shown on the certificate*." (Emphasis added.)

In this case, plaintiff's binder, i.e., the certificate of insurance, provided him with coverage between December 30, 2014 and January 29, 2015. In other words, the certificate expired on its own terms on January 29, 2015, before the February 5, 2015 collision. Plaintiff contends that the 10-day notice requirement set forth in MCL 500.3020(1)(b) is controlling. To that end, plaintiff implies that the January 30, 2015 letter from Farm Bureau indicating that his application was incomplete constituted a notice of cancellation because it advised him that he did not have a policy with Farm Bureau at that time. Accordingly, plaintiff avers that the 10-day notice period under MCL 500.3020(1)(b) began to run on January 30, 2015, and because the February 5, 2015 collision occurred within the 10-day notice period, he was covered under the binder on the date of the collision.

Plaintiff's argument is misplaced because, as the circuit court recognized, even if the binder is construed as a short-term policy, "it expired on its own terms on January 29, 2015." While MCL 500.3020(1)(b) requires insurers to provide "a not less than 10 days' written notice of cancellation," a notice of cancellation is not required when the period of coverage has expired. See *McCormic*, 202 Mich App at 238. Moreover, Farm Bureau never issued plaintiff a formal insurance policy, and the certificate of insurance issued to plaintiff merely provided him with coverage for his Mountaineer "until the expiration date shown on the certificate," MCL 257.328(2). Contrary to plaintiff's contention, to conclude otherwise would render MCL 257.328(2) meaningless.

Further, we are unpersuaded by plaintiff's reliance on *Du Brul v American Mfr's Mut Ins Co*, 60 Mich App 299; 230 NW2d 404 (1975), and *State Auto Mutual Ins Co v Babcock*, 54 Mich App 194; 220 NW2d 717 (1974), for the general proposition that Farm Bureau's only effective means of cancelling plaintiff's coverage under the certificate of insurance was by providing him with 10-day written cancellation notice. Although we are not compelled to follow either *Du Brul* or *Babcock*, see MCR 7.215(J)(1), we will address them because their discussions are relevant to the issue presented.

In *Du Brul*, the plaintiff received a 30-day binder on March 15, 1970, and on March 27, 1970, the defendant cancelled the policy without notifying the plaintiff. *Du Brul*, 60 Mich App at 300. The plaintiff was involved in a collision on April 9, 1970, and the defendant asserted that the plaintiff was not insured on that date because it had cancelled the policy. *Id*. This Court reversed the circuit court's ruling that the plaintiff was not insured because the plaintiff was not provided "the necessary 10 days' notice of cancellation; therefore she was still insured under the contract at the date of the accident." *Id*. at 301. This Court did not address the fact that the collision occurred within the 30-day binder period. Similarly in *Babcock*, the defendant was involved in a collision that occurred within a binder period, but one day after he received his insurance company's cancellation notice, and the circuit court ruled that the defendant was not insured on the date of the collision. *Babcock*, 54 Mich App at 197-200. This Court reversed,

holding that defendant was insured pursuant to the binder on the date of the accident because the applicable 10-day statutory notice requirement had not been fulfilled. *Id*. at 208.

*Babcock* and *Du Brul* are distinguishable from this case because here, plaintiff's collision occurred after the expiration date indicated on the certificate of insurance that he received from Farm Bureau, whereas the discussions in *Babcock* and *Du Brul* addressed generally whether the insured motorists were covered under a binder before the date of expiration, when their insurance companies purportedly canceled coverage within the applicable period.

In sum, because plaintiff's certificate of insurance provided him with coverage until January 29, 2015, the period of coverage expired before February 5, 2015, when he was involved in a collision. Accordingly, on the day of the collision, any coverage plaintiff previously had with Farm Bureau policy was no longer in effect and a notice of cancellation was not required. Therefore, the circuit court correctly concluded that plaintiff did not have any automobile insurance with Farm Bureau on February 5, 2015.

## B. MISREPRESENTATIONS

Although the circuit court did not make a ruling on this issue, defendants argued in their motions for summary disposition that they were entitled to such because the discovery of misrepresentations in the application process rendered any coverage plaintiff had void *ab initio*. Plaintiff contends that this is an attempt to circumvent the statutory notice issue. We agree with defendants and conclude that, alternatively, Farm Bureau was entitled to rescission after discovering misrepresentations in plaintiff's insurance application.

"It is well-settled that a material misrepresentation made in an application for no-fault insurance entitles the insurer to rescind the policy." *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). See also *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517; 540 NW2d 480 (1995) ("We have no dispute with the general proposition that an insurer may rescind a policy ab initio because of a material misrepresentation in the application for insurance."). "[A] fact or representation in an application is 'material' [when] communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001), quoting *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959).

However, an insurer waives its right to rescission when—after discovery of the material misrepresentation in the application—it issues a notice of cancellation, effective at some date in the future, rather than a letter of rescission. *Burton*, 213 Mich App at 517. Accordingly, if the insurer elects rescission, this Court will "not interfere with defendant's right to rescind the policy ab initio . . . upon discovery of the material misrepresentation, regardless of whether that discovery occurred before or after the loss." *Id*. at 518. "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). "Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Id*.

In this case, defendants aver that plaintiff made two material misrepresentations in his insurance application: (1) that he did not operate an uninsured motor vehicle owned by him in the six-month period preceding his insurance application; and (2) that he held current automobile insurance at the time of his application. Plaintiff's deposition testimony makes clear that neither of these representations were accurate. Furthermore, Reed's testimony supports the conclusion that plaintiff's misrepresentations were material because she indicated that if an applicant did not have insurance for the entire six-month period before the current application date, he was not eligible to receive an insurance policy with Farm Bureau. Similarly, she testified that if Farm Bureau determines that an applicant drove an automobile without necessary insurance, the applicant is ineligible for an insurance policy with Farm Bureau. Therefore, the misrepresentations were material because each "would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.' " *Oade*, 465 Mich at 253-254, quoting *Keys*, 358 Mich at 82. Additionally, regardless of whether plaintiff intentionally misrepresented information in his application, because Farm Bureau relied upon the information—i.e., because it related to Farm Bureau's guidelines for coverage—rescission is justified in this context. *Wilson*, 231 Mich App at 331.

Plaintiff avers that because there is no evidence of actionable fraud,[3] there is accordingly no legal basis to void his coverage *ab initio*. However, actionable fraud is not the only type of fraud or misrepresentation that would entitle a party to rescission if the contract had been fraudulently procured. *Titan Ins Co v Hyten*, 491 Mich 547, 555-558; 817 NW2d 562 (2012). Innocent misrepresentation does not require scienter, but rather "that the misrepresentation be made in connection with making a contract and the injury suffered by the victim must inure to the benefit of the misrepresenter." *Id*. at 556-557 n 5, quoting *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 118; 313 NW2d 77 (1981). Plaintiff's contention thus misapprehends the full extent of the effect of any misrepresentation—even an innocent one—in the application process.

Much of plaintiff's counter-argument on appeal regarding this issue focuses on his assertion that Heinzman provided a "bogus" AAA policy number in the application. This distinction, however, is meaningless because "[a] contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to

---

[3] "Actionable fraud" requires proof of six elements:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), quoting *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919), overruled in part on other grounds by *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 116 n 8; 313 NW2d 77 (1981).]

suffer for neglect of that duty." *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 130; 713 NW2d 801 (2005). Plaintiff signed the application after having had the opportunity to read and review it. Specifically, at his deposition, plaintiff stated that his signature appeared on the application, and when asked whether he read the form before signing it, he responded, "I skimmed over it, yes." Therefore, because plaintiff signed the application after he "skimmed over it," he affirmed any representations or misrepresentations in the document. *Id*. at 129-130.

Because plaintiff misrepresented that he did not operate an uninsured motor vehicle owned by him in the six-month period preceding his insurance application and that he held current auto insurance at the time of his application, Farm Bureau was entitled to rescind *ab initio* any coverage plaintiff might have had under the certificate of insurance. Therefore, notwithstanding that plaintiff was not insured on February 5, 2015, because the policy expired on its own terms on January 29, 2015, defendants were entitled to summary disposition on the alternative grounds of misrepresentation.

Finally, because we conclude that plaintiff was not insured with Farm Bureau on February 5, 2015, the circuit court correctly ruled that he was ineligible to receive PIP benefits from Farm Bureau. See MCL 500.3105(1); MCL 500.3113(b).

Affirmed.


/s/ Colleen A. O'Brien
/s/ Jonathan Tukel
/s/ Anica Letica