CITY OF WARREN *v.* MAC-WAY CONSTRUCTION COMPANY

1. Motions—Accelerated Judgment—Summary Judgment—Court Rules.

   Motions for accelerated judgment and for summary judgment must be based upon one of the grounds enumerated in court rules regarding accelerated and summary judgments, otherwise they cannot be granted (GCR 1963, 116.1, 117.2[1][3]).

---

References for Points in Headnotes

[1–3, 5] 41 Am Jur, Pleadings § 340 *et seq.*
[4] 45 Am Jur 2d, Interpleader § 36.
[6–8] 45 Am Jur 2d, Interpleader § 7 *et seq.*
[9, 10, 12] 45 Am Jur 2d, Interpleader § 35 *et seq.*
[11] 45 Am Jur 2d, Interpleader §§ 5, 6.

2. MOTIONS — ALTERNATIVE REQUESTS — ACCELERATED JUDGMENT — SUMMARY JUDGMENT — COURT RULES.

An alternative motion for either an accelerated or a summary judgment cannot be granted where the moving party fails to allege at least one of the grounds enumerated in court rules regarding accelerated and summary judgments (GCR 1963, 116-.1, 117.2[1][3]).

3. MOTIONS — ALTERNATIVE REQUESTS — ACCELERATED JUDGMENT — SUMMARY JUDGMENT — COURT RULES.

A motion by defendant construction company for an accelerated, or in the alternative a summary, judgment, was properly denied where the matters alleged in that alternative motion did not include any ground enumerated in the accelerated or summary judgment court rules but raised instead new factual issues which defendant claimed made plaintiff city's interpleader action improper (GCR 1963, 116.1, 117.2[1] [3]).

4. INTERPLEADER—MONIES PAID INTO COURT—MOTIONS—SUMMARY JUDGMENT.

The effect of a ruling requiring plaintiff city to pay into court certain contract monies claimed by defendant construction company and its surety, defendant insurance company, was that the city's complaint for interpleader was proper and that defendant construction company's second motion for summary judgment was disallowed, even though the trial court did not rule directly upon defendant's motion.

5. INTERPLEADER—MOTIONS—SUMMARY JUDGMENT.

Entry of a judgment of interpleader for plaintiff city was, in effect, a denial of three motions for summary judgment by defendant construction company even though the record did not clearly show whether the lower court disposed of the case on the basis of the motions for summary judgment or of the pre-trial statements made by counsel.

6. INTERPLEADER—CLAIMS AGAINST PLAINTIFF—MULTIPLE LIABILITY —CLAIMANTS REQUIRED TO INTERPLEAD.

All persons having claims against a plaintiff may be joined as defendants and may be required to interplead where their claims are such that the plaintiff is actually exposed or may be exposed to double or multiple liability (GCR 1963, 210.1).

7. INTERPLEADER—JOINDER OF CLAIMANTS—ADVERSE CLAIMS—NO GROUND FOR OBJECTION.

That the claims against a plaintiff do not have a common origin, or are not identical, but are adverse to and independent of

one another, is no ground for an objection to a joinder of claimants as defendants in an action of interpleader . (GCR 1963, 210.1).

8. Interpleader—Court Rule.

The interpleader court rule covers any situation where a plaintiff is, or may be, exposed to double or multiple liability and eliminates all of the old technicalities which formerly limited the use of interpleader (GCR 1963, 210.1–3).

9. Interpleader—Deposits in Court—Payment of Monies—Unpaid Bills—Evidence—Sufficiency.

Payment to defendant construction company of a portion of construction contract funds deposited with the lower court by plaintiff city under a judgment of interpleader was improper where the trial court ordered the payment without affording defendant insurance company, as surety for defendant construction company, any opportunity to present evidence bearing upon defendant construction company's claim that plaintiff city had unlawfully withheld that sum of money from it and without it ever being established whether the construction company, at the time that plaintiff city filed its interpleader complaint, had unpaid obligations to subcontractors and materialmen, whether it had in fact paid these claims, or what claims, if any, were paid.

10. Interpleader—Deposits in Court—Payment of Monies—Unpaid Bills—Evidence—Sufficiency.

Trial court, before ordering payment to defendant construction company of a portion of contract funds deposited with court by plaintiff city under a judgment of interpleader, should have required defendant construction company to prove its claim that bills for labor and materials were in fact outstanding and should have given defendant insurance company, as surety for that construction company, an opportunity not only to present testimony, but also to cross-examine in order to develop evidence, on this issue, provided that such evidence had any real bearing on the question of whether the payment of money to defendant construction company was based on equitable principles.

11. Contracts—Insurance—Suretyship—Performance, Payment Bonds—Obligor's Assignment of Funds in Bond Application—Validity.

Trial court should have construed the contracts between the interpleaded defendants, a construction company and its surety,

insofar as those contracts applied to the release of a portion of the construction contract funds paid into court by plaintiff city under a judgment of interpleader, and if the trial court had held those contracts invalid for any reason, it should have ordered that the entire sum of money due from plaintiff city to defendant construction company be released to that defendant.

12. CONTRACTS — INSURANCE — SURETYSHIP — CONSTRUCTION — EVIDENCE.

The ultimate disposition of interpleaded funds being dependent upon an interpretation of contracts between interpleaded defendants, which provided for an assignment by defendant construction company to defendant surety of contract funds on all bonded jobs under certain circumstances to secure defendant surety from loss because of defendant company's default, the Court of Appeals will reverse that portion of a judgment of interpleader providing for payment to the construction company of a part of the interpleaded funds and will remand the cause to the lower court for the taking of testimony bearing upon the questions of default by defendant construction company under the terms of its contract with defendant surety, of whether the construction company was still in business at the time of its default, and of whether the construction company was capable of responding by way of indemnity to losses which defendant surety might suffer as a result of having issued performance and payment bonds covering its construction activities.

Appeal from Macomb, James E. Spier, J.  Submitted Division 2 December 6, 1968, at Detroit. (Docket No. 2,804.)  Decided November 25, 1969.

Complaint by City of Warren, a municipal corporation, against Mac-Way Construction Company, a Michigan corporation, and Reliance Insurance Company, a Pennsylvania corporation, for a judgment of interpleader to determine to whom certain contract moneys should be paid.  Judgment for Mac-Way Construction Company for partial payment. Reliance Insurance Company appeals.  Mac-Way

Construction Company cross-appeals. Reversed in part and remanded with instructions.

*Robert F. Cella*, for plaintiff.

*Moore, Sills, Poling & Wooster*, for defendant Reliance Insurance Company.

*Sullivan, Sullivan, Ranger & Ward*, for defendant Mac-Way Construction Company.

Before: LEVIN, P. J., and HOLBROOK and ROOD,* JJ.

ROOD, J. The parties are in agreement as to the facts. On or about April 2, 1964, defendant Mac-Way Construction Company entered into two contracts with the city of Warren, Michigan, for sewer work. These are referred to as numbers 1802–10, Project "A" and 1802–11, Project "B". The contract prices were $1,530,760 and $458,802, respectively.

On August 27, 1964, Mac-Way Construction Company, a Michigan corporation, entered into a subcontract with S. Weissman Excavating Co., Inc., for sewer tunnel work on the Huber Avenue Foundry of Chrysler Corporation in Detroit, Michigan. The contract price on this job was $169,750.

Defendant Reliance Insurance Company furnished, as surety, performance bonds and labor and materials payment bonds on behalf of Mac-Way, as principal, in connection with each of the three contracts listed above, the penalty of each bond being in the full contract amount.

In October, 1964, a dispute arose concerning the subcontract of Mac-Way with Weissman, and, as

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

a result, Weissman took over Mac-Way's work under the subcontract on the Chrysler job. Mac-Way filed suit in Wayne county circuit court against Weissman, Chrysler, and others, claiming a conspiracy to willfully and maliciously injure Mac-Way, breach of contract, and libel and slander, asking for damages in the sum of $5,098,832.

Weissman joined Reliance, as surety of Mac-Way, as a party in the Wayne county suit, asserting that Mac-Way breached the subcontract and asking damages of $138,419.12, claiming that amount to be the cost of completing the subcontract. The Wayne county circuit court suit is presently pending.

November 24, 1965, as a result of the Wayne county circuit court suit and the damages therein prayed, Reliance notified Mac-Way that it had set up a reserve of $140,000, and made demand upon Mac-Way to post collateral in that amount to secure Reliance in connection with the Weissman claim. Reliance based this demand upon paragraph VII of the agreements contained in applications for contractor's bonds delivered by Mac-Way to Reliance in connection with Mac-Way's request for bonds.

Paragraphs IV and V of the agreements in the applications for bonds made by Mac-Way are relied upon by Reliance, which claims that these paragraphs set forth an assignment of contract funds on all bonded jobs under certain circumstances and provide that the assignment is for the purpose of securing the surety from loss "*   *   * by reason of said bond, or bonds, or under, or by reason of any other bond, or bonds, heretofore or hereafter executed by the Company on behalf of the undersigned   *   *   * ."

On November 24, 1965, Reliance notified the city of Warren of its claim in and to contract monies payable to Mac-Way as a result of the city of War-

ren contracts and also calling the city's attention to Mac-Way's assignments in the bond application agreements.

On January 6, 1966, the city of Warren filed a complaint for judgment of interpleader naming Mac-Way and Reliance as defendants and tendering the contract monies into court. A third defendant, National Bank of Detroit, has disclaimed any interest in the funds and was dismissed as a party-defendant.

Reliance filed its answer claiming a right to the Warren contract monies by virtue of Mac-Way's assignments in the applications for the surety bonds.

On March 2, 1966, the city of Warren filed amendments to its complaint; and, again on September 27, 1966. These amendments dealt primarily with claimed adjustments in the amount owing from the city to Mac-Way; a prayer was also made for an injunction restraining the defendants from commencing any other actions against the plaintiff. Hearings were held on the various motions and in connection with the pre-trial on February 8, March 8, August 1, September 26, October 17 and October 24, 1966. No testimony of any kind was taken at any of the hearings. On October 17, 1966, the city deposited with the court the sum of $116,003.87 and at this time the trial court entered a judgment of interpleader, providing as part of that judgment that the sum of $59,290.37 be paid to Mac-Way and directing that the balance of the fund would be held by the court until the claims of the city of Warren, Mac-Way, and Reliance might be determined under proper pleadings. Reliance Insurance Company appeals from that part of the judgment only which provides for payment of the sum of $59,290.37 to Mac-Way from the interpleaded fund.

Mac-Way cross-appeals, after leave granted by this Court, raising questions dealing with the assign-

ments made by Mac-Way to Reliance in the applications for surety bonds, contending that this Court should dismiss the interpleader action as to Reliance and, in view of the fact that the city of Warren did not file an appeal, requesting that the matter be remanded for the entry of an order in favor of Mac-Way granting to it all sums of money now held by the Macomb circuit court, less those amounts claimed by the city of Warren.

The defendant, Mac-Way Construction Company, filed three motions for accelerated judgment or summary judgment. Two of these motions appear in the file, with the whereabouts of the third motion not being clear, except that the third motion is set forth in its appeal brief. In order to understand the rather complicated issues which have been raised in this case it is necessary to review the various motions filed and to set out to some extent at least the allegations made in them.

The complaint was filed on January 6, 1966, and asks a judgment of interpleader under GCR 1963, 210. On January 26, 1966, without filing an answer to the complaint, the defendant Mac-Way Construction Company filed a motion for "accelerated judgment and/or summary judgment of no cause of action". This motion alleges in substance the following:

"That the plaintiff intentionally joined the defendant, National Bank of Detroit, in order to confuse the issues and make it appear that plaintiff had reason to withhold payment of monies due to Mac-Way. This action was characterized as collusive. (par. 2)

"That the complaint was filed as a result of collusion with the defendant, Reliance Insurance Company. (par. 3)

"That plaintiff, as well as defendant, Reliance, had adequate remedies at law and that Reliance is not a proper party defendant. (par. 4)

"That plaintiff had no real adverse claimants since the funds had been due and payable to Mac-Way since September 13, 1965. (par. 5)

"That only one defendant (Mac-Way) is entitled to the fund. (par. 6)

"That the plaintiff cannot prevail because the fund is not specific nor is the fund wholly in the hands of plaintiff and that the plaintiff collusively is attempting to hold past due as well as future sums in order to benefit Reliance. (par. 7)

"That Reliance is not claiming the same fund, but seeks to obtain indefinite indemnification and that Reliance's right is dependent upon adjudication of another suit. That plaintiff is not indebted to Reliance or in privity with Reliance. (par. 8)

"That the alleged adverse claims are not mutually exclusive. (par. 9)

"That over $80,000 of the fund is due to materialmen, laborers and for salaries and wages and, therefore, not a proper fund for interpleader. (par. 10)

"That plaintiff is not free of independent liability to Mac-Way. (par. 11)

"That the claim of Reliance is not valid for the reason that it is predicated upon invalid instruments and correspondence with the plaintiff, which correspondence has no legal efficacy and, therefore, the plaintiff is exposed to dual liability. (par. 12)

"That Reliance is estopped from claiming indemnification against Mac-Way under the circumstances surrounding the removal of Mac-Way from the project from which Reliance's claim arises. (par. 13)"

Mac-Way asks for a judgment of no cause of action against the plaintiff.

It cannot be seriously contended that the foregoing motion is one for an accelerated judgment under GCR 1963, 116.

If the motion is proper, it must be treated as a motion for summary judgment under the provisions of GCR 1963, 117.   GCR 1963, 117.2(1) provides that "* * * the opposing party has failed to state a claim upon which relief can be granted," GCR 1963, 117.2(3) provides "* * * that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law."

None of the matters alleged in the motion raise the issue as to whether the complaint fails to state a claim upon which relief can be granted.   The allegations, in fact, raise new factual issues, which, it is claimed, make interpleader improper.   The motion does not allege that there is no genuine issue as to any material fact under the provisions of GCR 1963, 117.2(3).   Not only does the motion fail to so allege but also in reality it raises new issues of fact as previously pointed out.

The motion for summary judgment was argued before the court on February 8, 1966.   No testimony was taken and the transcript consists of some 23 pages of statements by the various attorneys.   At this hearing it was claimed by the attorney for Mac-Way that a part of the funds due from the city of Warren to Mac-Way, to the extent of approximately $80,000, was owed by Mac-Way to materialmen, laborers and subcontractors.   Reliance, through its attorney, freely admitted that if there were in fact *bona fide* third party claimants in the category of laborers and materialmen, the money due from the city of Warren to Mac-Way could be used for the payment of these claims.   Reliance further offered to stipulate that the city of Warren could pay such

bills, if the claims were properly determined and certified to by the contractor. The attorney for Mac-Way also contended during his argument that the subcontract entered into by Mac-Way Construction Company with S. Weissman Excavating Company, Inc., was entered into before the contract for sewer work between the city of Warren and Mac-Way Construction Company. Reliance disputes this fact and the statement of facts which is not in dispute shows that the contracts between the city of Warren and Mac-Way were entered into on April 2, 1964, whereas, the contract between Mac-Way and S. Weissman was entered into on August 27, 1964. These facts are mentioned only because they bear upon the interpretation of Mac-Way's assignment to Reliance under their application agreements in connection with the issuance of surety bonds by Reliance on all three contracts. On February 21, 1966, the lower court filed an opinion. In this opinion the court held that under the pleadings the interpleader was proper, but directed that no order be entered until after a pre-trial was held on March 8, 1966.

At the pre-trial which was held on March 8, the parties stipulated, subject to approval of their clients, that the case would be settled by payment into court of the sum of $113,003.67, from which the plaintiff would retain $3,000, as claimed in its amended complaint, and $67,000, approximately, would be disbursed for the payment of laborers and materialmen in accordance with an agreement to be completed between Reliance and Mac-Way and upon verification that the bills were in fact incurred on the Warren job. The balance of approximately $40,000 was to be disbursed by court order pursuant to a later agreement between Reliance and Mac-Way.

The case was to be marked closed upon entry of an order pursuant to that stipulation.

After the pre-trial and in response to the amended complaint Mac-Way filed on May 16, 1966, a second motion for summary judgment in which it repudiated the pre-trial stipulation and again demanded dismissal of plaintiff's complaint. Mac-Way further contended that the city of Warren had unlawfully retained the sum of $59,000 in progress payments since June of 1965 and that all necessary certificates and approved estimates of the work performed necessary to obtain such payments had been presented to the plaintiff. Mac-Way reiterated that the city of Warren had an interest in the funds which it proposed to pay into court and that there was collusion on the part of the plaintiff in holding up those funds until such time as Reliance could make claim to those monies. Mac-Way again asked for dismissal of the complaint. The hearing on this second motion for summary judgment was on August 1, 1966. The transcript of this proceeding indicates that the court at this time was advised that the stipulation at pre-trial had been repudiated, that Mac-Way had paid the claims for labor and materials, and that these claims were, therefore, no longer elements to be considered. Mac-Way renewed its demand for the payment directly to it of $59,000, which it asserted was long over-due, apparently claiming that its assignment to Reliance was not applicable to that amount. After considerable discussion between counsel, the court allowed the plaintiff to amend its complaint but required it to pay into court the full amount of the fund in the amount of approximately $116,000. The plaintiff was then to file any claims which it might have against the fund in the hands of the court. The court did not rule directly upon the motion for summary judgment although the

effect of the court's ruling in requiring the city to pay the money into court was to disallow the motion and to find that the complaint for interpleader was proper.

The parties were before the court again on September 26, 1966, at which time the attorneys again argued their claims before the court. Apparently, this hearing was held as a result of a third motion for summary judgment filed by Mac-Way. At this time Mac-Way was still objecting to the interpleader action, contending that the action was not in accordance with GCR 1963, 210, and that the interpleader complaint should be dismissed. Mac-Way again demanded payment to it of the sum of $59,000 which it again claimed was due and owing to it before plaintiff's receipt of the notice from Reliance claiming that Mac-Way had assigned contract funds to it. At this time, it is interesting to note that counsel for Mac-Way not only stated that they were moving for a summary judgment of no cause of action, but also asked that the money be paid into court.

The court stated as follows: "That's one way the court can get rid of this case. Have the money paid into court and have them file objections to the $59,000 being paid out."

Counsel for Reliance pointed out to the court that at various times counsel for Mac-Way had informed the court that there were bills unpaid for materialmen and laborers, and that these bills would be verified as being part of the city of Warren job. It was further pointed out that Reliance had no way of knowing whether the bills had actually been paid, or what bills had been paid, or whether such bills could be considered as proper claims against Reliance as surety. Reliance again asserted its claim to the monies by virtue of Mac-Way's assignment to it and pointed out that it had answered the com-

plaint and set forth its position in its pleadings.
Reliance pointed out to the court that this was the
third motion for summary judgment, and that the
court had previously ordered the money paid into
court on the theory that the parties could then pro-
ceed to establish their right to the money by framing
issues as to the facts in the case.  It should be
pointed out that, at this point, defendant Mac-Way
had not filed an answer to the complaint, nor has it
ever filed an answer.  The court during the course
of the foregoing arguments by counsel, made the
following observations: "What is the objection to
paying the $59,000 which was apparently due and
payable, apparently wrongfully withheld, as long as
it goes for the payment of labor?"  At this point
counsel for Reliance pointed out to the court that
they had previously requested a sworn statement
establishing what accounts were due and payable,
that after this request, the claim was made that
everything had been paid in full, and that it had not
been established whether the bills were outstanding
at the time of the pre-trial, nor had it been shown
when they were paid.  Request was made of counsel
for Mac-Way to indicate when the bills were paid.
Counsel for Mac-Way indicated that some of the
bills were accounting bills, some were of other types
not involved in labor and materials, and that it
would not make any difference how or when the bills
were paid.

The foregoing account of what occurred in this
case, admittedly lengthy, is deemed to be essential to
an understanding of the rulings which follow.
Whether the lower court disposed of this case on
the basis of the motions for summary judgments or
whether disposition was on the basis of the pre-
trial statements made by counsel is not clear from
this record.  However, the motions for summary

judgment should have been denied, and this, in effect, was what the lower court did inasmuch as a judgment of interpleader was entered. A careful reading of the record and transcript in this case reveals that none of the parties to this case made any serious contention that interpleader was not proper. Mac-Way and Reliance, in presenting their claims to this Court, do not raise such an issue. The lower court was correct in entering a judgment of interpleader under the provisions of GCR 1963, 210.1–3. GCR 1963, 210.1 provides in part:

"* * * It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. * * *"

An examination of GCR 1963, 210 clearly reveals that all persons having claims against a plaintiff may be joined as defendants and may be required to interplead when their claims are such that the plaintiff is actually exposed, or may be exposed, to double or multiple liability. The rule specifically states that it is not a ground for objection that the claims of the several claimants do not have a common origin or are not identical but are adverse to and independent of one another and that it is not a ground for objection that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. The rule eliminates all of the old technicalities which formerly limited the use of interpleader and broadens the scope to cover any situation where the plaintiff is, or may be, exposed to double or multiple liability.

Defendant-appellant, Reliance Insurance Company, objects only to that part of the judgment of

interpleader contained in paragraph 7, which provides for the payment by the county clerk to Mac-Way Construction Company of the sum of $59,290.37. The cross-appellant, Mac-Way Construction Company, asks this Court to construe the application assignments executed by it before the surety bonds were issued by Reliance Insurance Company; to find, as a matter of law, that such assignment contracts are not only contrary to public policy but also that they are ambiguous and should be construed against Reliance; and to hold that Reliance's procedure in asserting its claim to the assigned funds was illegal because that procedure was contrary to the method authorized in the bond application agreements, and that the claimed illegal procedure raises an equitable estoppel against Reliance.

Mac-Way Construction Company contends that the lower court ordered the payment to it of the sum of $59,290.37 upon "equitable principles". It is not possible from this record to determine exactly upon what basis this order was made, although it is possible that the lower court felt that the matter had been disposed of by stipulation at the pre-trial. The lower court did not then have the advantage, as does Court, of having a complete transcript of the hearings. In any event, the order was made without the taking of any testimony and Reliance was not afforded an opportunity to present evidence bearing upon the claim that the city of Warren had unlawfully withheld that sum of money from Mac-Way Construction Company. It was never established whether Mac-Way Construction Company, at the time the interpleader complaint was filed, had unpaid obligations to the sub-contractors and materialmen, whether it had in fact paid these claims, nor what claims, if any, had in fact been paid. Mac-Way first contended that the sum of $80,000 was due and

owing but later admitted that the amount was substantially less. Mac-Way should have been required to prove its claim that bills were in fact outstanding. Reliance should have been afforded an opportunity to present testimony on this issue. Reliance should have been given the opportunity to cross-examine in order to develop this evidence if, in fact, such evidence had any real bearing on the question of the disposition of the $59,290.37 on "equitable principles".

It is apparent that the lower court did not construe the contracts between Mac-Way and Reliance insofar as they applied to the release of $59,290.37. If it had been determined by the lower court that the contracts were invalid for any reason, then the entire sum due from the city of Warren would have been released to Mac-Way. It is apparent that the decision regarding the release of the $59,290.37 was based upon other considerations. The ultimate disposition of this matter will depend upon an interpretation of the contract contained in Mac-Way's applications for the surety bonds which were issued by Reliance on both contracting jobs. If the provisions of these contracts are to be properly construed, testimony should be taken bearing upon the question of default by Mac-Way under the surety contract terms. It would also seem to be material as to what the then status of Mac-Way Construction Company was, since there is an issue as to whether it was still in business, and whether it was capable of responding by way of indemnity to losses which Reliance might suffer as a result of its surety bonds. We think it would be undesirable for us to attempt to construe the intricate language of defendants' contract until the trial court has determined the operative facts, thereby narrowing and facilitating

our task. Furthermore, we would benefit from the trial court's interpretation.

This court, in the case of *Sparr Construction Company* v. *Dearborn Heights Building Authority* (1966), 4 Mich App 153, passed upon a similar factual situation. In that case the city of Dearborn Heights Building Authority contracted with the plaintiff, Sparr Construction Company, for the erection of two buildings. Under this contract Sparr was required to furnish a performance bond and a payment bond which were obtained from Maryland Casualty Company. Upon completion of the buildings Sparr demanded payment. On the refusal of the city of Dearborn Heights Building Authority to pay, Sparr brought an action to recover the balance due on the contract. The city of Dearborn Heights answered admitting that it owed somebody the money but that Maryland Casualty Company also claimed the money. The city accordingly filed a counter-complaint for interpleader asking permission to pay the money into court. In the *Sparr* case, the agreement in the application for the bonds issued by Maryland Casualty Company provided for an assignment of Sparr's rights under the construction contract in the event Sparr defaulted giving rise to claims against Maryland Casualty Company. Sparr Construction Company moved for summary judgment which was granted. The city of Dearborn Heights was ordered to issue seven individual checks for the amount of the money due under the contract to the plaintiff, Sparr; and upon each check to have added as payees the contractors listed in the motion for summary judgment. The lower court granted the motion for summary judgment and Maryland Casualty Company appealed asserting that in fact it should have a summary judgment on the pleadings and record. This Court

held that the lower court erred in granting the *Sparr* motion for summary judgment.

"* * * By so doing, the trial court precluded Maryland from establishing Sparr's default which would entitle Maryland to the proceeds of the Dearborn contract under Sparr's agreement with Maryland. This could be established only by a trial of the factual issues.

"If upon a hearing on the merits Maryland proves that Sparr did in fact default, the assignment provision should control. On receipt of the amount due under the Dearborn contract, Maryland could then exercise its right to determine the validity of the various claims made against it by the subcontractors."

The summary judgment was set aside and the cause was remanded for trial, with directions that an order be entered discharging the city of Dearborn Heights Building Authority, and that it be granted leave to pay the amount of its indebtedness into court to await litigation of the various questions. Although it is true that the *Sparr* case deals with an assignment in one contract only, whereas, the instant case involves the validity of assignments in all three contracts between Mac-Way and Reliance, it is believed that the same principles apply to this case.

That portion of the judgment of interpleader providing for the payment to Mac-Way of $59,290.37 is set aside, and the cause is remanded to the lower court for disposition of the issues after the parties have been given an opportunity to enter proper pleadings.

Costs to defendant, Reliance Insurance Company.

All concurred.