GRP, LTD. v UNITED STATES AVIATION UNDERWRITERS, INC.

1. APPEAL AND ERROR—DECLARATORY JUDGMENT PROCEEDINGS—FINDINGS OF FACT.

Review of a declaratory judgment proceeding is *de novo,* and generally, a trial court's determination will not be overturned on appeal unless it is clearly erroneous.

2. INSURANCE—CONTRACTS—ORAL CONTRACTS—ELEMENTS OF CONTRACT—EXPRESS AGREEMENT.

The essential elements required to effectuate an oral insurance contract are: (a) the subject matter; (b) the risk; (c) the premium; (d) the duration of the risk; (e) the amount of insurance; it is not necessary that each element be agreed upon expressly if the intention of the parties can be gathered from the circumstances of the case.

3. INSURANCE—CONTRACTS—ELEMENTS OF CONTRACT—EXPRESS AGREEMENT—IMPLIED AGREEMENT.

A trial court's finding of a valid oral temporary contract of insurance cannot be said to be improper where the testimony, admissions, and evidence indicate that express discussions between the parties were had regarding each essential element except duration, and where the duration of the contract can be implied from the express discussion of the quotations for premiums.

4. COSTS—ATTORNEYS' FEES—DECLARATORY JUDGMENT ACTION.

Generally, attorneys' fees may not be awarded as costs unless authorized by statute or court rule, and neither statute nor court rule provide for the awarding of attorneys' fees incurred in a declaratory judgment action.

5. COSTS—ATTORNEYS' FEES—COMMON FUND.

Reasonable attorneys' fees are allowed where a prevailing party has protected a common fund for the benefit of others as well

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 703.
[2, 3] 43 Am Jur 2d, Insurance §§ 200–202.
[4, 5] 20 Am Jur 2d, Costs §§ 1, 3, 72–86.

as itself, but this exception to the general prohibition against allowing attorneys' fees as costs does not apply where a plaintiff is joined by all other parties immediately interested in the subject fund who retain counsel and actively participate in the litigation.

Appeal from Kent, George V. Boucher, J. Submitted April 8, 1976, at Grand Rapids. (Docket No. 23732.) Decided August 23, 1976. Leave to appeal applied for.

Complaint by GRP, Ltd. against United States Aviation Underwriters, Inc. and Crosby & Henry, Inc. seeking a declaration of rights regarding the existence of an insurance contract or, in the alternative, a finding of negligence or breach of contract on the part of defendant Crosby & Henry, Inc. Audrey M. Snite, Marilyn Ruffe and Shirley A. Buth intervened as parties plaintiff. Judgment for plaintiffs. United States Aviation Underwriters, Inc., appeals. Plaintiff GRP, Ltd., cross-appeals as to a finding that defendant Crosby & Henry, Inc. was not negligent and had not committed a breach. Affirmed.

*Schmidt, Heaney, Howlett & Van't Hof* (by *Larry J. Titley),* for GRP, Ltd.

*Spangenberg, Shibley, Traci, Lancione & Marcus,* and *Seymour I. Rosenberg,* for Audrey M. Snite.

*Rhoades, McKee & Boer* (by *Terrence L. Groesser),* for Marilyn Ruffe.

*Hillman, Baxter & Hammond,* for United States Aviation Underwriters, Inc.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for Crosby & Henry, Inc.

Before: J. H. Gillis, P. J., and N. J. Kaufman and E. A. Quinnell,* JJ.

N. J. Kaufman, J. This is an appeal from the granting of a declaratory judgment by the Kent County Circuit Court which found that an enforceable contract of insurance had been effected between plaintiff GRP Ltd. (hereinafter GRP) and defendant United States Aviation Underwriters, Inc. (hereinafter USAU) on an aircraft owned by GRP. Plaintiff GRP cross-appeals a finding that defendant Crosby & Henry, Inc. was not negligent in failing to procure insurance and had not committed a breach of a contract between them.

The present controversy arose as a result of a crash of a Beechcraft Baron aircraft owned by GRP on May 14, 1974, into Lake Erie after takeoff from Cleveland Airport. The crash killed the pilot, John R. Buth, and the three passengers aboard. After this mishap, GRP requested USAU to compensate it for its loss and to defend an action initiated by one of the crash victims. It based its request upon an oral contract of insurance purportedly obtained for GRP by its insurance agent, defendant Crosby & Henry, Inc. USAU refused on the basis that an effective policy of insurance had not been bound.

Because of this impasse, GRP initiated the present action seeking a declaration of rights as to the existence or nonexistence of the oral insurance contract and the terms thereof if one was found. In the absence of such coverage, GRP asked that liability be found against defendant Crosby & Henry, Inc. for their negligence in failing to procure insurance. Shortly thereafter, the case was joined by intervening plaintiffs, Audrey M. Snite,

* Circuit judge, sitting on the Court of Appeals by assignment.

Marilyn Ruffe and Shirley A. Buth, as representatives of three of the crash victims' estates. Later at trial, the pleadings were amended by GRP to add an additional count alleging breach of contract by Crosby & Henry, Inc.

The evidentiary record before us discloses that two Grand Rapids corporations, Grand Rapids Label Co. and Grand Rapids Forging and Steel, prior to April 25, 1974, contemplated the purchase of a Beechcraft Baron aircraft for their joint use. The aircraft was to be acquired in the name of GRP, then being incorporated, and was to be owned equally by the two parent corporations. This intention was communicated to James Crosby, an officer of Crosby & Henry, Inc., who undertook to obtain quotations on insurance coverage for the aircraft. Pursuant to this request, Crosby met on April 25, 1974, with Paul Widener and Daniel Ek, representatives of USAU.

At this point, the testimony conflicts. All parties agree that at this meeting a discussion concerning the writing of aviation insurance for GRP's risk transpired. Furthermore, it is uncontroverted that the representatives of USAU inscribed various figures and notations on a work sheet. In addition, the box entitled "Quote" on the work sheet was checked off. The significance of this, however, was disputed by the witnesses.

Mr. Crosby testified that Ek and Widener stated that the work sheet was a quotation by USAU to underwrite the risk with the coverage, liability limits and hull insurance listed on the paper. Ek and Widener contended that they had informed Crosby that the work sheet was not a quote, and that further information was needed on the pilots, corporate structure and name of the insured before the risk could be bound. Mr. Ek, however,

admitted that he had checked the box on the work sheet, but maintained it was done inadvertently. In response to a query from plaintiffs' counsel, both Ek and Widener conceded that, when the quote box is checked, a quote has been given. Moreover, on a prior occasion, information substantially similar to that listed on the work sheet had been the basis of a quote and a valid enforceable binder had been issued. After this meeting, Crosby sent a letter to GRP and suggested that various coverage be placed with USAU, including voluntary settlement coverage.[1]

On May 3, 1974, Crosby telephoned USAU to inquire if coverage could be bound. Initially he spoke to Widener, who referred him to Ek. According to Crosby, Ek said Crosby could bind coverage when the exposure existed. Ek maintained that he never responded to the question of whether Crosby could bind coverage because he lacked authority to bind such coverage. Later at trial, however, Widener testified that Ek had informed him he had not bound coverage because of the lack of pilot information and not because of his lack of authority. After this conversation, Ek noted on the work sheet used at the April 25th meeting the annual premium to be charged on the voluntary settlement coverage.

Subsequent to the May 3rd telephone conversation, and immediately following the purchase of the aircraft, representatives of GRP went to the offices of Crosby & Henry, Inc. They sought to finalize their insurance needs on the aircraft in

---

[1] Voluntary settlement coverage is a type of insurance peculiar to the aviation insurance industry whereby after an accident those occupants of a plane who are covered by it, or their estates, may elect to accept a predetermined cash settlement rather than pursue legal remedies which would require the establishment of legal liability of the insured.

accordance with the recommendations set forth by Crosby in his April 25th letter, including the voluntary settlement coverage. Mr. Crosby stated that the insurance was bound with USAU in conformity with his recommendations in the earlier letter and was to take effect on May 10, 1974. On May 14, 1974, several days after this meeting, the crash occurred.

After evaluating all of the evidence, the trial judge rendered a written opinion in which he found, based on the evidence, that it was the practice in the aviation insurance industry to quote a risk only after a decision to bind had been made. Further, the judge found it to be an aviation insurance industry practice to bind risks orally and to advise the agent of the termination of a binder within a reasonable time if a detailed application was not submitted or if a review of the application indicated that the risk was unacceptable. He also found that James Crosby received a quote on April 25, 1974, from Ek and Widener on hull, liability and medical payment coverage, a quote on voluntary settlement coverage on May 3, 1974, and, on the same date, authority to bind coverage in accordance with the two quotes. On the basis of the foregoing facts, the court concluded in his opinion that coverage had been bound in accordance with the standard USAU form in the following amounts:

(a) All risks hull coverage in the amount of $40,000, subject to deductibles of $100 if not in motion and $500 if in motion;

(b) $1,000,000 single limit bodily injury and property damage coverage including passenger liability, each occurrence;

(c) $5,000 medical payments;

(d) $100,000 voluntary settlement per seat, in-

cluding crew, when the aircraft was piloted by John Buth. In addition, the trial judge held that GRP was entitled to its reasonable and necessary costs incurred as of the date of his decision in investigating and defending the law suit commenced by one of the crash victims, including attorneys' fees. However, attorney fees and costs were not allowed, except as authorized by statute or court rule, for the bringing of the present suit.

On appeal, we find only two of USAU's arguments merit discussion. They argue that the judge's finding that an oral temporary contract of insurance had been entered into on the basis of the April 25th and May 3rd meetings was factually unsupported. Even if the judge was correct in finding that a contract was formed, USAU argues, that contract would still have been unenforceable because there was no "meeting of the minds" on the elements requisite to enforcement of the agreement.

We review a declaratory judgment proceeding *de novo. McComb v McComb,* 9 Mich App 70; 155 NW2d 860 (1967). However, the trial judge's findings of facts in these cases are examined pursuant to the standard of review elicited in GCR 1963, 517.1. *Curbelo v Macomb County Community College Trustees,* 38 Mich App 432; 196 NW2d 843 (1972), *lv den* 387 Mich 781 (1972), *Coffee-Rich, Inc v Department of Agriculture,* 1 Mich App 225; 135 NW2d 594 (1965). Although no formula has been developed to be applied with mathematical precision in every case, cases have established the general proposition that "[a court's] determination will not be overturned on appeal unless it is clearly erroneous, *i.e.,* the evidence manifestly preponderates contrary to its decision". *Warren v June's Mobile Home Village and Sales Inc,* 66

Mich App 386, 389; 239 NW2d 380 (1976). This affords the trial judge a wide scope of discretion in resolving factual disputes before him, and circumscribes the role of this Court on appeal. The judge is so empowered to dispose of these factual matters, though we might have decided differently had we decided the case initially, because he has personally seen and heard all of the evidence. "We in turn have read only a sterile transcript of the pro and con testimony." *Kevreson v Michigan Consolidated Gas Co,* 374 Mich 465, 474; 132 NW2d 622 (1965).

These principles are especially applicable here where the witnesses at trial contradicted themselves, and each other, and where the court's ability to assess the credibility of these witnesses was crucial. We therefore affirm this finding. The transcript is replete with inconsistent and contradictory testimony by the witnesses, which presented the trial judge with the thorny problem of whom to believe. The trial judge expressly declared that he found Crosby's testimony more credible than that of Ek and Widener. The record indicates that the testimony of USAU's own representatives made many of their contentions highly implausible, or at least raised a credibility problem which was the duty of the trier of fact to resolve. For example, Ek admitted that a check in the quote box indicated a quote had been given. The judge could properly find from this testimony that in this case the check could have been placed in the box with the intent to arrive at a valid insurance contract, and deem his explanation of inadvertance inadequate. Likewise, the inconsistencies in Ek and Widener's explanation on why coverage was not bound after the May 3rd meeting could have raised doubts about their veracity as to

whether in fact coverage was even denied. Further facts need not be recounted; suffice it to say that we cannot find the trial court's finding that authority had been given to issue an oral binder of insurance and that one had been issued was clearly erroneous.

USAU's second appellate contention is that the oral contract was unenforceable because it lacked the essential elements required by *State Automobile Mutual Insurance Co v Babcock,* 54 Mich App 194, 204; 220 NW2d 717 (1974): " '(a) subject matter; (b) the risk; (c) premium; (d) duration of the risk; (e) the amount of insurance'. In some sources, an additional element is the identity of the parties." USAU submits that, in creating a valid temporary contract of insurance, there must be more than negotiations or, as here, even a willingness to bind the risk. Instead, there must be a meeting of the minds on every essential term. USAU argues that GRP did not meet its burden of establishing a valid contract because it failed to prove the existence of express agreement on any of the essential terms, especially premium and contract duration. We disagree.

A careful analysis shows that implicit in the argument of USAU is a test which requires *express* agreement on all essential terms as a prerequisite to the establishment of an enforceable contract. In other words, USAU forecloses the possibility of a contract based on terms *implied* from previous dealings or surrounding circumstances. In our opinion, USAU's interpretation of *Babcock* is improper.

In *Martin v Lincoln Mutual Casualty Co,* 285 Mich 646, 650; 281 NW 390 (1938), the Supreme Court set down the general rule, quoting with approval the rule as stated by Justice Cooley in 1 Cooley's Briefs on Insurance (2nd Ed), p 535:

" 'Though it is regarded as essential that all the elements of the contract be agreed upon, *it is not necessary that this be done expressly.* In *Concordia Fire Ins. Co. v. Heffron.,* 84 Ill.App. 610, it was held that an oral contract of insurance will sustain an action though no express agreement is made as to the amount of premium to be paid or the duration of the policy if the *intention of the parties to the contract in these particulars can be gathered from the circumstances of the case.' "(Emphasis supplied.)

Accord, 1 Couch on Insurance (2d ed), §§ 14.15, 14.16 and 14.18.

With the foregoing principles in mind, we cannot say that the trial court's finding of a valid oral temporary contract of insurance was improper. Express discussions regarding each element, except duration, were admitted by the representatives of USAU, testified to by Crosby and found on the work sheet used during their meetings. The durational term can be implied from the express discussion of the quotes given which stated premiums for one year's coverage, these quotes being written on the work sheet by USAU's own representatives. It is apparent that this, and other facts brought out in the case, was ample justification so that the court could properly find that USAU had bound the risk.

In its cross-appeal, GRP claims error was committed when the trial court concluded as a matter of law that GRP was not entitled to costs and attorneys' fees except as authorized by statute or court rule.

Generally, attorneys' fees may not be awarded as costs unless authorized by statute or court rule. *Cooley v Mid-Century Insurance Co,* 52 Mich App 612; 218 NW2d 103 (1974), *State Farm Mutual Automobile Insurance Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973). Neither statute nor court

rule permits recovery of attorneys' fees in a declaratory judgment action. *Cooley, supra,* p 617. GRP, however, argues two exceptions to the general rule, preservation of a common fund for the benefit of others and interpleader actions.

Where a prevailing party has protected a common fund for the benefit of others as well as itself, reasonable attorneys' fees, payable from the fund, are allowed. *State Farm Mutual Automobile Insurance Co, supra,* p 77. This rule is based on a policy which seeks to compensate a party who has borne the burden and expense of a litigation which has benefited others. 20 Am Jur 2d, Costs, § 84, pp 68–69. In the present case, GRP was joined by all others immediately interested in the insurance fund who retained counsel and actively participated in the litigation. As GRP did not create or preserve a common fund by its conduct alone, it is entitled only to the attorney fee taxable as costs.

An alternative basis argued by GRP to support its claim for attorneys' fees is that the instant case is comparable to an interpleader action because GRP indifferently sought recovery from USAU or Crosby & Henry, Inc. One who commences an interpleader action is entitled to the recovery of attorneys' fees. See, *Star Transfer Line v General Exporting Co,* 308 Mich 86; 13 NW2d 217 (1944). Generally, 49 ALR2d 190, § 3(a), pp 193–198. The present case, however, is not an interpleader action. Interpleader is available when the plaintiff may be exposed to double or multiple liability. GCR 1963, 210.1; *City of Warren v Mac-Way Construction Co,* 20 Mich App 84; 173 NW2d 767 (1969). GRP's suit against USAU and Crosby & Henry, Inc. was not brought to protect itself against multiple liability, but to recover for its own loss and protect itself against its anticipated

liability to the intervening plaintiffs. Therefore, GRP's alternative basis for recovery of attorneys' fees is without merit.

For the reasons stated above, we affirm the trial court's decision. No costs, neither party having prevailed in full.