GRP, LTD v UNITED STATES AVIATION UNDERWRITERS, INC

Docket No. 58933. Argued November 3, 1977 (Calendar No. 13).—
Decided January 23, 1978.

GRP, Ltd., brought an action for a declaratory judgment against
United States Aviation Underwriters, Inc., and Crosby &
Henry, Inc., an independent insurance agency, as to the exis-
tence of an insurance contract covering an airplane owned by
the plaintiff at the time it crashed. Audrey M. Snite, Marilyn
Ruffe, and Shirley A. Buth intervened as parties plaintiff. Kent
Circuit Court, George V. Boucher, J., found that the insurance
company had orally agreed, through the independent agent, to
cover the risk, which the trial court found to be the practice of
the industry, and granted judgment for the plaintiffs. The
Court of Appeals, J. H. Gillis, P. J., and N. J. Kaufman and
E. A. Quinnell, JJ., affirmed (Docket No. 23732). Defendant
United States Aviation Underwriters, Inc., appeals. *Held:*

1. The insurer argues that the trial court's decision was
based upon an erroneous finding as to the practice of the
aviation insurance industry. Even assuming that this argument
is correct, the trial court also found that the independent
insurance agent had been given authority by the insurer to
bind it on the quotations given for the insurance policy pre-
mium in this case. This finding of fact by the trial court was
not factually unsupported or clearly erroneous.

2. Although it is regarded as essential that all the elements
of the insurance contract be agreed upon, it is not necessary
that this be done expressly. An oral contract of insurance will
sustain an action although no express agreement is made as to
the amount of premium to be paid or the duration of the policy
if the intention of the parties can be gathered from the circum-
stances of the case.

3. In the instant case there is evidence in the record which
would support a finding that every essential element of the
contract had been agreed upon by the parties. The quotations
which had been written on the insurance agent's "work sheet"
show that the coverage was intended to be for one year. Review
of the record discloses no reversible error.

Affirmed.

70 Mich App 671; 247 NW2d 583 (1976) affirmed.

*Hillman, Baxter & Hammond* for defendant United States Aviation Underwriters, Inc.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells* and *Robert A. Benson)* for defendant Crosby & Henry, Inc.

Per Curiam. This is an action for declaratory judgment. Plaintiff-appellee GRP, Ltd. (hereinafter GRP), filed an action in Kent Circuit Court seeking a declaration to the effect that at the time when an airplane owned by it crashed, there was a binding contract of insurance between it and defendant-appellant United States Aviation Underwriters, Inc. (hereinafter USAU). The trial court found that such a contract did, in fact, exist, and the Court of Appeals affirmed. The main thrust of USAU's argument has been that there was "no meeting of the minds" as to the essential elements necessary to form a contract and that the evidence adduced below was insufficient to support the trial court's finding that USAU had agreed to cover the risk. We granted leave to appeal and our review of the record discloses no reversible error. Accordingly, we affirm.

In early 1974, Grand Rapids Label Company and Grand Rapids Forging and Steel Company decided to purchase an airplane for their joint use. A third corporation was to be formed to be known as GRP, Ltd., for purposes of acquisition of the airplane. GRP, Ltd., in turn, was to be owned equally by Grand Rapids Label Company and Grand Rapids Forging and Steel Company. James Crosby, an independent insurance agent, was contacted for

purposes of obtaining an insurance quotation for the as yet unpurchased airplane.

On April 25, 1974, Crosby attended a meeting with Paul Widener and Daniel Ek, who represented USAU. The discussions which were had at this meeting culminated in the composition of a "work sheet". The work sheet contained certain facts and figures dealing with the proposed operation of the airplane and the coverage desired. The parties disagree on whether the filling out of this "work sheet" was intended to be a firm quotation as to the conditions and cost of coverage. USAU contends that its intent was not to make the "work sheet" a quotation because additional information was still needed. At trial, Daniel Ek admitted that he had checked a box on the work sheet entitled "quote" but contended that this had been inadvertent on his part. It is the position of GRP that as of April 25, 1974, they had a firm quotation for insurance coverage by USAU. Mr. Crosby testified at trial that both Ek and Widener had indicated to him that the "work sheet" was indeed a quotation by USAU. Thereafter, Crosby sent a letter to GRP which suggested that insurance coverage be secured from USAU.

On May 3, 1974 Crosby spoke on the telephone with Daniel Ek of USAU. Here again there is conflicting testimony as to the content and significance of the communications between the principals. Crosby maintained at trial that Ek definitely informed him that he (Crosby) could bind coverage when the exposure existed. In other words, according to Crosby, he had been given authority to commit insurance coverage when the airplane was purchased and ready for use in accordance with the terms previously agreed upon. However, Ek testified that he did not respond to the question of

whether Crosby could bind coverage. Ek took the position that he lacked authority to bind such coverage on his own. It is significant to note, however, that when Mr. Widener testified at trial he indicated that Mr. Ek had told him that he (Ek) had declined to bind coverage because of the pending questions with regard to pilot information, rather than because of any lack of authority to do so.

Shortly after the May 3, 1974 telephone conversation, GRP purchased the airplane—a Beechcraft Baron. Representatives of GRP informed Mr. Crosby of the purchase and requested that he obtain the requisite insurance coverage. Mr. Crosby indicated that the insurance was bound with USAU and would be effective on May 10, 1974. On May 14, 1974 the airplane crashed, killing the pilot and three passengers.

USAU argues first of all that the finding of the trial court to the effect that Mr. Ek had given Mr. Crosby the authority to bind insurance coverage on behalf of USAU was factually unsupported and clearly erroneous. In reaching this conclusion, the trial judge found initially that it is the practice in the aviation insurance industry to "quote a risk" only after the insurance company has made a decision to bind that risk. The trial court also found that it is the practice of the industry to bind risks orally. The trial court then went on to find that on April 25, 1974 Mr. Crosby had indeed received a quotation from USAU and that on May 3, 1974 Crosby had received a quotation on voluntary settlement coverage.[1] The trial court also

---

[1] For purposes of this opinion we adopt the explanation of this form of coverage set forth in the Court of Appeals opinion in the instant case:

"Voluntary settlement coverage is a type of insurance peculiar to the aviation insurance industry whereby after an accident those

found that Mr. Crosby received authority from Mr. Ek to bind coverage in accordance with that quotation and the quotation of April 25, 1974.

The Court of Appeals, in reviewing USAU's allegation of error in this regard, noted initially that although a declaratory judgment proceeding is to be reviewed by that Court *de novo,* the findings of fact are nonetheless to be examined pursuant to the standard set forth in GCR 1963, 517.1.[2] The Court of Appeals took note of the conflict in the testimony at trial. The Court of Appeals placed particular emphasis upon the express statement of the trial judge that he found Mr. Crosby's testimony to have been more credible than that of either Ek or Widener.

On appeal here, USAU argues that the findings of fact of the trial court in this vein should be rejected because they are based, *inter alia,* upon the preliminary finding that it is the custom in the aviation insurance industry to quote a risk only after a decision to bind has been made. USAU argues that there is no support for that conclusion in the record. However, even assuming *pro arguendo* that USAU is correct in this regard, it is of no avail because the trial judge expressly found that on May 3, 1974, Mr. Crosby had been given authority to bind USAU with regard to both the quotation on voluntary settlement and with regard

occupants of a plane who are covered by it, or their estates, may elect to accept a predetermined cash settlement rather than pursue legal remedies which would require the establishment of legal liability of the insured." 70 Mich App 671, 675, fn 1; 247 NW2d 583 (1976).

[2] GCR 1963, 517.1 provides in relevant part:

".1 Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. * * * Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

to the April 25, 1974 quotation. Thus, regardless of whether or not the practice in the industry is to quote only after an internal decision to insure has been made, the trial court in the instant case expressly believed Crosby's testimony that he had been given the authority to bind and expressly disbelieved the testimony of Mr. Ek. We cannot say that the finding of the trial court on this point was factually unsupported or clearly erroneous.

USAU also contends that the decision of the trial court should be set aside because there was no "meeting of the minds" with regard to the essential terms of the oral contract. USAU relies principally upon the Court of Appeals decision in *State Automobile Mutual Ins Co v Babcock,* 54 Mich App 194, 204; 220 NW2d 717 (1974), for definition of just what those essential terms are. In *Babcock,* the Court of Appeals quoted from *Bankers Indemnity Ins Co v Pinkerton,* 89 F2d 194, 197 (CA 9, 1937), wherein the United States Court of Appeals indicated:

"The necessary elements to effectuate an oral contract of insurance are: (a) Subject-matter; (b) the risk; (c) premium; (d) duration of the risk; (e) the amount of insurance."

In *Babcock,* the Court of Appeals also indicated that the identity of the parties might be an additional element.

The Court of Appeals, in rejecting USAU's contentions on this point, indicated that USAU's arguments were based upon a faulty premise. That premise, according to the Court of Appeals, was that there must be evidence in the record of express agreement on each and every essential term. The Court ruled that the proper test was

that which our Court had quoted with approval in the case of *Martin v Lincoln Mutual Casualty Co,* 285 Mich 646, 650; 281 NW 390 (1938). In that case, this Court made reference to the following statement contained in 1 Cooley's Briefs on Insurance (2d ed), p 535:

"Though it is regarded [as] essential that all the elements of the contract be agreed upon, it is not necessary that this be done expressly. In *Concordia Fire Ins Co v Heffron,* 84 Ill App 610 [1899], it was held that an oral contract of insurance will sustain an action, though no express agreement is made as to the amount of premium to be paid or the duration of the policy, if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case."

The Court of Appeals, in applying this standard, found evidence in the record which would support a finding that every essential element of the contract had been agreed upon by the parties. According to the Court, there was some question with regard to the duration of the contract, but the quotations which had been written on the work sheet clearly indicated that the coverage was to be for one year.

We have examined the record in this cause, and our analysis leads us to the same conclusion reached by the trial court and by the Court of Appeals. The evidence adduced below, both testimonial and documentary, supports the finding that a valid oral contract of insurance existed between GRP and USAU when the airplane in question crashed.

We have examined USAU's other allegations of error and find them to be without merit.

Because of our disposition of USAU's appeal, it

is unnecessary to reach the merits of GRP's cross-appeal.

Costs to appellee.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLE-MAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.